**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN – SOUTHEASTERN DIVISION**

DANIEL WHITE,                                         Hon. Mark A. Goldsmith
    Plaintiff,                                      Case No.: 2:25-cv-10306

- vs -

~~CITY OF DETROIT and~~ LASHAUNTIA OLIVER,
    Defendant.

_____/

| | |
|---|---|
| LAW OFFICES OF IVAN L. LAND, P.C., | CITY OF DETROIT LAW DEPARTMENT |
| Ivan L. Land Sr. (P65879) | Gregory B. Paddison (P75963) |
| Attorney for Plaintiff | Attorney for Defendant |
| 25900 Greenfield, Rd., Ste. 210 | Coleman A. Young Municipal Center |
| Oak Park, MI 48237 | 2 Woodward Avenue, Suite 500 |
| (248) 968-4545 | Detroit, MI 48226 |
| Ill4law@aol.com | (313) 237-0435 |
| | paddisong@detroitmi.gov |

_____/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**NOW COME**, Defendant, LASHAUNTIA OLIVER, by and through her attorney, Gregory B. Paddison, and for Defendant's Motion for Summary Judgment, Defendants state as follows:

1. The undersigned counsel certifies that council communicated <u>in writing</u> with opposing counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; opposing counsel thereafter expressly denied concurrence.

2. Plaintiff has three remaining claims: Fabrication of Evidence, Malicious

Prosecution, and Intentional Infliction of Emotional Distress.

3. Plaintiff's claims must be dismissed in their entirety because no genuine issues of material exist for trial.

4. Ofc. Oliver is entitled to qualified immunity because she did not violate Plaintiff's clearly established constitutional rights.

Therefore, this Court should enter summary judgment under Federal Rule 56 and dismiss all of Plaintiff's claims with prejudice.

Respectfully Submitted,
CITY OF DETROIT LAW DEPARTMENT

Dated: March 13, 2026                    /s/  Gregory B. Paddison
                                              Gregory B. Paddison (P75963)
                                              Attorney for Defendant

ii

## TABLE OF CONTENTS

Table of Contents ………………………………...…………………….....iii
Local Rule Certification ………………………………………………...v
Issues Presented ………………………………………………...………vi
Table of Authorities ………………………………………………………vii
Procedural Summary and Summary of the Pleadings …………………….....ix
Brief..............................................................................................................1

I. Statement of Material Facts …………………………………….....1

II. Standard of Review …………………………………………….......8

III. Law & Argument ….…………………………………………….....9

    A. Preliminary Discussion …..………………….…………………….9

    B. Summary Judgment should be Granted in Favor of Ofc. Oliver as to Count II (Fabrication of Evidence) as……………………………11

        i. To the extent that this claim is brought as a 14th Amendment Claim, the alleged conduct did not affect a Jury Decision …..12

        ii. Ofc. Oliver did not Fabricate Evidence …..…......................12

        iii. The unlawfulness of the alleged misconduct was not clearly established and Ofc. Oliver is entitled to Qualified Immunity ……………………………………………………………16

    C. Summary Judgment should be Granted in Favor of Ofc. Oliver as to Count III (Malicious Prosecution) as …………………………….19

        i. There was Probable Cause for Plaintiff's Arrest and Ofc. Oliver did not "Participate" in the decision to prosecute ……............19

        ii. The unlawfulness of the alleged misconduct was not clearly established and Ofc. Oliver is entitled to Qualified Immunity ……………………………………………………..……….23

D. Summary Judgment should be Granted in Favor of Ofc. Oliver as to Count IV (Intentional Infliction of Emotional Distress) a as her Conduct was Objectively Reasonable, rather than Extreme and Outrageous and she is entitled to Qualified Immunity? ……………………….………...24

E. Reservation ………………….………………………………...………..25

Conclusion ........................................................................................................25

## LOCAL RULE CERTIFICATION

The undersigned counsel certifies that counsel communicated in writing with opposing counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief, and three business days have lapsed without opposing counsel expressly agreeing to the relief, orally or in writing.  Local Rule 7.1(a).

I, Gregory B. Paddison, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller that 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).  I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

**ISSUES PRESENTED**

1) **SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF OFC. OLIVER AS TO COUNT II (FABRICATION OF EVIDENCE) AS:**

   a. **To the extent that this claim is brought as a 14th Amendment Claim, the alleged conduct did not affect a Jury Decision?**

   b. **Ofc. Oliver did not Fabricate Evidence?**

   c. **The unlawfulness of the alleged misconduct was not clearly established and Ofc. Oliver is entitled to Qualified Immunity?**

   Defendant Responds:          Yes.
   Plaintiff Presumably Responds:     No.

2) **SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF OFC. OLIVER AS TO COUNT III (MALICIOUS PROSECUTION) AS:**

   a. **There was Probable Cause for Plaintiff's Arrest and Ofc. Oliver did not "Participate" in the decision to prosecute?**

   b. **The unlawfulness of the alleged misconduct was not clearly established and Ofc. Oliver is entitled to Qualified Immunity?**

   Defendant Responds:          Yes.
   Plaintiff Presumably Responds:     No.

3) **SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF OFC. OLIVER AS TO COUNT IV (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS) A AS HER CONDUCT WAS OBJECTIVELY REASONABLE, RATHER THAN EXTREME AND OUTRAGEOUS AND SHE IS ENTITLED TO QUALIFIED IMMUNITY?**

   Defendant Responds:          Yes.
   Plaintiff Presumably Responds:     No.

vi

## TABLE OF AUTHORITIES

U.S. CONSTITUTION

1. U.S. Const. Amed. IV
2. U.S. Const. Amed. XIV

FEDERAL RULES OF CIVIL PROCEDURE

1. Fed. R. Civ. P. 56

FEDERAL STATUTORY AUTHORITY

1. 42 USC § 1983

UNITED STATES SUPREME COURT AUTHORITY

1. *Anderson v. Creighton*, 483 US 635 (1987)
2. *Anderson v Liberty Lobby, Inc.*, 477 US 242 (1986)
3. *Bordenkircher v. Hayes*, 434 US 357 (1978)
4. *District of Columbia v. Wesby*, 583 US 48, 63 (2018)
5. *Hunter v. Bryant*, 502 US 224 (1991)
6. *Lane v. Franks*, 573 US 228 (2014)
7. *Manuel v. City of Joliet*, 137 SCt 911 (2017)
8. *Monell v Department of Social Services*, 436 US 658 (1978)
9. *Mullenix v. Luna*, 577 US 7 (2015)
10. *Plumhoff v. Rickard*, 572 US 765 (2014)
11. *Wilson v. Layne*, 526 US 603 (1999)

6TH CIRCUIT AUTHORITY

1. *Ahlers v. Schebil*, 188 F3d 365 (6th Cir 1999)
2. *Caminata v. Cty. of Wexford*, 664 FedAppx 496 (6th Cir 2016)
3. *Chappell v. Cleveland*, 585 F3d 901 (6th Cir 2009)
4. *Davenport v. Causey*, 521 F3d 544 (6th Cir 2008)
5. *Everson v. Leis,* 556 F3d 484 (6th Cir 2009)
6. *Guiterrez v Lynch*, 826 F2d 1534 (6th Cir 1987)
7. *Horton v Potter*, 369 F3d 906 (6th Cir 2004)
8. *Hutsell v. Sayre*, 5 F3d 99 (6th Cir 1993)
9. *Johnson v. Moseley*, 790 F3d 649 (6th Cir 2015)

10. *Kendell v Hoover Co.*, 751 F2d 171 (6th Cir 1984)
11. *Legenzoff v. Steckel*, 564 FApp'x 136 (6th Cir 2014)
12. *Mills v. Barnard*, 869 F3d 473 (6th Cir 2017)
13. *Muhammad v. Close,* 379 F3d 413 (6th Ci. 2004)
14. *Sagan v United States*, 342 F3d 493 (6th Cir 2003)
15. *Sykes v. Anderson*, 625 F3d 294 (6th Cir 2010)
16. *United States v. Amerson*, 38 F3d 1217 (6th Cir 1994)
17. *Webb v. United States*, 789 F3d 647 (6th Cir 2015)
18. *Williams v. Lavigne*, 209 FApp'x 506 (6th Cir Dec. 22, 2006)
19. *Zavatson v. City of Warren*, 714 FApp'x 512 (6th Cir 2017)

DISTRICT COURT AUTHORITY

1. *Adonizio v. Credit Control Servs.,* 2023 WL 21953 (MD Fla. Jan. 3, 2023)
2. *Akima v. Peca*, 652 FSupp3d 848 (ED Mich. 2023)
3. *Fleming v. Scruggs*, 465 FSupp3d 720 (ED Mich. 2020)
4. *In re Roberts*, 193 B.R. 828 (Bankr. WD Mich. 1996)
5. *Reguli v. Hetzel*, 2025 WL 1524495, (MD Tenn. May 28, 2025)
6. *Ruble v. Escola*, 898 FSupp2d 956 (ND Ohio 2012)
7. *Woodruff v. Oliver*, 2025 WL 2231045 (ED Mich. Aug. 5, 2025)

STATE COURT AUTHORITY

1. *Roberts v. Auto-Owners Ins Co.*, 422 Mich 594 (1985)
2. *VanVorous v. Burmeister*, 262 MichApp 467 (2004)
3. *Walsh v. Taylor*, 263 MichApp 618 (2004)

OTHER AUTHORITY

1. *Black's Law Dictionary* (9th ed. 2009)

### RELEVANT PROCEDURAL SUMMARY & SUMMARY OF THE PLEADINGS

This lawsuit arises out of Plaintiff's arrest on February 2, 2023. ECF No.: 1.  On June 5, 2025, Count I of Plaintiff's Complaint, asserting a "14th Amendment Due Process 'Brady' Violation" was voluntarily dismissed. ECF No.: 16.

On June 17, 2025, the Court entered its Scheduling Order setting deadlines for Fact and Expert Discovery on February 5 and March 5, 2026, respectively, while also setting March 19, 2026 as the deadline for "Dispositive Motions & Motions to Limit/Exclude Expert Testimony." ECF No.: 17, Pg. ID 164. Discovery has closed and the remaining claims are Counts II-IV, asserting Fabrication of Evidence, Malicious Prosecution, and Intentional Infliction of Emotional Distress claim, against Officer, LaShauntia Oliver. Plaintiff has agreed to voluntarily dismiss Count V (*Monell*) pled against the City of Detroit.  *Id*.[1] The Order reflecting this has been submitted but not yet entered.

Defendant now seeks Summary Judgment of all remaining claims and is filing a Motion for Leave to File Media Exhibit contemporaneously with the filing of this Motion. Captain Anthony O'Rourke and Officer LaShauntia Oliver were deposed on February 2, 2026. The transcripts have not yet been received. Upon receipt, Defendant *may* seek leave of this Honorable Court to file a concise Supplemental Briefing addressing the testimony stated therein.

---

[1] *v. Department of Social Services*, 436 US 658 (1978).

<u>**STATEMENT OF MATERIAL FACTS**</u>

**Jan. 29, 2023:**[1]

1. Around 8:00 p.m., Detroit Police ("DPD") received a 911 call reporting that L. Walker ("Mr. Walker") had been carjacked at gunpoint. <u>Event Report, Ex "A"</u>.

2. Officers K. Larson and G. Scouten responded to the location, where Mr. Walker reported that he'd:

> Picked up a female near 7 Mile and Hoover and drove her to Gratiot and Bessimore. When he parked to let her out, she got into a black Tahoe on the other side of the street. A male exited the Tahoe and approached Mr. Walker stating, 'she forgot her phone in your car.' As Mr. Walker looked for the phone, the male produced a handgun, stating 'take everything off, where's the gun?' Mr. Walker removed his pants, jacket, and shoes, before the male then got into Mr. Walker's vehicle and drove off. <u>Larson Narrative, Ex. "B"</u> (*cleaned up*).

3. Mr. Walker described the carjacker as "a black male, brown complexion, short, slim build, with short braids, and a beard [], armed with an unknown black handgun[,]" **adding that he told the female that he has a gun but** did not mention to her that it was not with him [*Id* (**emphasis added**)] also stating:

> **Maybe braids.** Maybe, I didn't get a great look at him. **Maybe, maybe short braids.** Brown skin complexion. I think he had like a little beard, maybe. It's so hard to tell you guys cuz one he flashed a gun on me, I was trying to stop him from shooting me…" <u>Scouten in-car Video, Ex. "C"</u> beginning at <u>0:01:10</u>.[2]

---

[1] All dates stated hereinafter refer to calendar year 2023 unless otherwise stated.

[2] This recording is being transcribed and upon receipt, will be filed as Ex. "NN".

1

4. Mr. Walker was taken to a police precinct to speak with Detective A. Fletcher ("Det. Fletcher"), where he added that he and the female had been drinking, she may have drugged him, and he would recognize the carjacker if he saw him, describing the assailant as a black male, 25-27 years old, 5'9" or 5'10", 135 to 150lbs, a thin moustache and full beard, light complexion, and wearing a black jacket. Walker Statement 1, Ex. "D".

**Jan. 31st:**[3]

5. Ofc. Oliver called Mr. Walker on his mother's phone number that he'd provided to Det. Fletcher. Mr. Walker explained that he'd retrieved his phone - that he'd left in the carjacked vehicle - from a gas station on Van Dyke, where an unknown female had dropped it off. Revised Investigator's Report, Ex. "F" at Pg. 2.[4]

6. Following this discussion, Ofc. Oliver drove to the gas station to view surveillance video from Jan. 30th, where she observed a female, matching the description Mr. Walker gave of the accomplice, returning the phone. Id.; see also, Ex. "B" and Jan. 30 Surveillance, Ex. "G". An Audio/Video Evidence Response Team ("AVERT") request for the extraction of the video was promptly made. Id.

**Feb. 2nd:**

---

[3] This case was assigned to Officer LaShauntia Oliver ("Ofc. Oliver") on Jan. 30th. Due to her roles in other investigations, her involvement in this case didn't begin until Jan. 31st. Generally, CATS Activity Log, Ex. "E".

[4] This Report was authored on Feb. 4th but is referenced here to provide a chronology.

2

7. **From 11:45 a.m. to 12:50 p.m.**, Ofc. Oliver interviewed Mr. Walker a second time. During this interview, Mr. Walker stated that he'd begun to recall additional details from the night of the carjacking including that:

    a. He and the female accomplice, known to him as 'Trinidad,' met at the Hoover Market, before driving to a parking lot where they had sex;

    b. They then drove to a gas station (the same gas station that Mr. Walker's phone was returned to on Jan. 30th) where he observed the female interact with several people before driving to the area where he was carjacked (Ex. "F" at Pg. 2; Walker Statement 2, Ex. "H"); and

    c. The carjacker may have been one of the men that Trinidad interacted with while at the gas station.[5]

8. Learning that Mr. Walker and the female had visited the same gas station on the night of the carjacking, Ofc. Oliver drove back to the location in search of additional video (on this occasion, from the night of Jan. 29th). Ex. "F" at Pg. 2.

9. During this visit, surveillance videos supported Mr. Walker's recollection (Id. at Pgs. 2-3), also providing images of the carjacker and additional images of the female accomplice. Collectively, Jan. 29 Surveillance, Ex. "I". A second AVERT request was submitted the next day and **the videos were extracted on Feb. 4th**. Feb. 3 AVERT Request, Ex. "J"; Owen Report, Ex. "K".

**Feb. 2nd (continued)**:

10. As Ofc. Oliver concluded her second interview with Mr. Walker and returned to

---

[5] **I think I saw the same Tahoe** …" Ex. "H" at Pg. 1 (**emphasis added**).

the gas station, members of the Commercial Auto Theft Section ("CATS") located the stolen vehicle, being driven by Plaintiff.  Officers initiated a traffic stop and placed Plaintiff under arrest without incident. Hebner Report, Ex. "L".

11. **At 12:58 p.m.**, Officer J. Wilcox ("Ofc. Wilcox"), was dispatched to the location of the arrest to transport Plaintiff to the Detroit Detention Center ("DDC") where he was booked at 1:40 p.m. Wilcox Report, Ex. "M"; Detainee Input, Ex. "N".

**Feb. 3rd**:

12. Mr. Walker visited the DDC to view a live line-up.[6] However, without enough men in custody for a live line-up, Ofc. Oliver instead prepared a photo line-up that included Plaintiff's image. Ex. "F" at Pg. 3; White Line-Up, Ex. "O".

13. In the presence of attorney, Wyatt Harris ("Mr. Harris") and Deputy D. Greenwald ("Dep. Greenwald"), Mr. Walker identified Plaintiff as the man who carjacked him. Id.; Line-Up Statement, Ex. "P".

14. With the positive identification, Ofc. Oliver began writing her Investigator's Report while other CATS members questioned Plaintiff, during which, he admitted knowing "Trinidad" but denied involvement in the carjacking, and claimed that he'd bought the vehicle for $2,000.00. Ex. "F" at Pg. 4; ECF No.: 1, Pg. ID 7 at ¶ 7(b); Interrogation Record, Ex. "Q".

---

[6] And a photo line-up for Porcha Woodruff ("Ms. Woodruff"), who'd been identified as possible match for the female accomplice a/k/a "Trinidad."

15. Shortly after 11:00 p.m., Officer Oliver submitted her Investigator's Report ("Original Investigator's Report") to her supervisor, Captain A. O'Rourke ("Cpt. O'Rourke"). O'Rourke IR E-mail (with Original Investigator's Report), Ex. "R". Cpt. O'Rourke responded, "this is a fantastic Investigators report! Nice work on the case! This is reviewed and approved." O'Rourke Response, Ex. "S".[7]

**Feb. 4th:**

16. At 8:35 a.m., Ofc. Oliver submitted the Original Investigator's Report to the Prosecutor's Office ("WCPO"). 0835 E-mail, Ex. "U" (attachment omitted).

17. At 9:45 a.m., Prosecutor Garrett Garcia ("APA Garcia"), responded:

> I need an updated IR on WHITE and WOODRUFF… I also think it would be help to get past the magistrate if the details about how V thinks he was drugged and his pistol was missing. I am going to charge both with everything... 0945 E-mail, Ex. "V".[8]

18. Ofc. Oliver replied, "I will make the corrections… and then upload onto PBK under "CORRECTED IR" and will send you an email. 0950 E-mail, Ex. "W".[9]

19. Ofc. Oliver made the requested changes (see, Ex. "F"), returned it to APA Garcia

---

[7] Ofc. Oliver also requested an inspection of the vehicle. Work Request, Ex. "T".

[8] Showing APA Garcia reviewed the reports and statements generated during the investigation, specifically Mr. Walker's statement to the female accomplice about having a gun and the carjacker asking, "where's the gun?" See, Ex. "B"; WCPO Subpoena Response, Ex. "X" (largely duplicative of Exhibits referenced elsewhere but attached to demonstrate the materials  provided to the WCPO).

[9] "Prosecutor by Karpel" or "PBK" is  a Case Management Program that allows Police and Prosecutors to share documents, evidence, media, etc., electronically.

for review [1014 E-mail, Ex. "Y" (attachment omitted)], before sending it to the 36th District Court. 1045 E-mail, Ex. "Z" (attachment omitted).

20. That afternoon, the Felony Information and Complaint were reviewed and approved by the WCPO and Magistrate. Signed Warrant Documents, Ex. "AA".[10]

21. Plaintiff was arraigned on the afternoon of Feb. 4th, after which he posted bond and was released. He was bound over at his probable cause conference on Feb. 13th, but the charges were dismissed at his Preliminary Examination on Mar. 13th, when Mr. Walker, failed to appear in court. Register of Actions, Ex. "CC".

**Miscellaneous Allegations**:

22. Plaintiff alleges that Ofc. Oliver and Dep. Greenwald interviewed him after his arrest on Feb. 2nd. ECF No.: 1, Pg. ID 5-6 at ¶¶ 25-26. There is no record of this and according to Plaintiff, his only discussion with officers at the DDC on Feb. 2nd, was with a Hispanic female and a black male, who were also present at his arrest. White Deposition, Ex. "DD" at Pgs. 28-32. Ofc. Oliver is a black female; Dep. Greenwald is a white male. Neither were present during Plaintiff's arrest.

23. Plaintiff alleges there was documentation of his purchase of the Malibu kept in the glovebox. ECF No.: 1, Pg. ID 7 at ¶ 33(c). No such documents were

---

[10] The videos from Jan. 29th and extracted by AVERT on Feb. 4th and the results of inspection of Mr. Walker's vehicle were received by Ofc. Oliver and provided to the WCPO shortly after the Arrest Warrant was signed. Exs. "K" and "BB".

uncovered during the vehicle's inspection. Ex. "BB" ["A search was conducted for any pertinent evidence ... **The search yielded negative results**"].

**Donna Jones**:

24. Plaintiff's sister, D. Jones, claims that during his arrest, she tried to contact Plaintiff on his cell phone, but her call was answered by a female Officer:

Q. [D]uring the course of that arrest, one of the officers that was there with your brother told you that they knew that your brother didn't commit the robbery and carjacking, right?
A. Yeah, yeah.

Q. [] And they said that they knew that because they had BP Gas Station video footage, and he wasn't on it; is that --
A. Yeah. They basically told me that they just had to take him to jail because he was actually in the car and that the car was reported -- like somebody got carjacked or something.

Q. [] Because, you know, I can understand if they say he has got to go to jail because he was picked up in a stolen car. But did they actually tell you that they knew he didn't commit it?
A. That's exactly what the -- it was a lady. It's exactly what she said.

Q. [T]hey knew he didn't do it because they had seen video that he wasn't on?
A. She said, "I know for a fact he didn't do it, but we got to take him in because he was caught in the car, and the car is reported stolen."

Q. Okay. I want to go back to this video, though. They -- they said they know for a fact they had seen the video, correct?
A. Uh-huh. Yep.

Q. Okay. And you are 100 percent sure of that?
A. I'm positive. Jones Deposition, Ex. "EE" at Pgs. 16-22.

25. However:

a. All officers present during Plaintiff's arrest were male. See, Exs. "L" and "M".

7

b. On Feb. 2nd Ofc. Oliver was interviewing Mr. Walker from 11:45 a.m. until 12:50 p.m.. Ex. "H". After the interview, she returned to the Gas Station to look for video from the night of Jan. 29th, seeing images of the male suspect for the first time. Ex. "I" at Pgs. 2, 5-6. This video wasn't extracted until Feb. 4th. Ex. "K". Plaintiff was arrested shortly before 12:58 p.m. on Feb 2nd. Ex. "M". In other words, it is **impossible** that any officer present for Plaintiff's arrest had seen surveillance images from Jan. 29 at the time of Plaintiff's arrest.

**Attorney Investigation**:[11]

26. Given Mr. Walker's description of the assailant, it is believed that the man seen on gas station video from Jan. 29th, is the suspect responsible for the carjacking, at the time believed to be Plaintiff. Ex. "D" at Pg. 2; Ex. "I" at Pgs. 2, 5-6.

27. A search of Plaintiff's social media uncovered images of Plaintiff and an unidentified individual, posted by Plaintiff less than a week before the carjacking. White Social Media, Ex. "FF"; Image Comparison, Ex. "GG".

28. Given Plaintiff's affiliation with the "82 Headbangers" Gang,[12] and noting the distinctive "82" tattoo in the middle of this unidentified individual's chest (White Social Media 2, Ex. "HH"), it would *seem* that *even if* Plaintiff did not participate in the carjacking *directly*, he nonetheless has criminal culpability in the event.

### STANDARD OF REVIEW

---

[11] The following was uncovered during the defense of this lawsuit. This information was not known to Ofc. Oliver and is included solely for the reader's edification.

[12] 82 Headbanger Bloods is the largest Blood gang in Michigan.

8

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a).  "[T]he court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F3d 493, 497 (6th Cir 2003).  Where the record evidence, construed favorably to the non-moving party, does not raise a genuine issue of material fact for trial, summary judgment is appropriate. *Guiterrez v. Lynch*, 826 F2d 1534, 1536 (6th Cir 1987).

Where there's an absence of evidence to support the nonmoving party's case , the burden shifts to the non-moving party to put forth evidence showing "a genuine issue for trial." *Horton v. Potter*, 369 F3d 906, 909 (6th Cir 2004).  The disputed fact must be material to survive Summary Judgment. *Anderson v. Liberty Lobby*, 477 US 242, 252 (1986). A "material" fact is a fact would establish or refute as essential element of a claim or a defense. *Kendell v. Hoover*, 751 F2d 171, 174 (6th Cir 1984).

## LAW & ARGUMENT

**Preliminary Discussion:** Plaintiff's Complaint ignores that the Investigator's Report (Ex. "F") is **not** a stand-alone document considered by the WCPO independent of the reports, statements, images, and other evidence, generated during an investigation. For instance, Plaintiff alleges, "[i]n the Request for Warrant, [Ofc.] Oliver omitted [t]hat she obtained a photo of the male suspect and submitted it to the prosecutor's office…" ECF No.: 1, Pg. ID 8 at ¶ 35(a). Of course she did, along with

9

the materials developed during her investigation, and APA Garcia's revision request

(Ex. "V"), demonstrates that he possessed and was aware of these documents and

media. The other alleged "omissions" suffer similar flawed reasoning.

> VICTIM's description of the male suspect and PLAINTIFF did not match… VICTIM identified PLAINTIFF despite PLAINTIFF not matching the VICTIM's original description, as PLAINTIFF was approximately seventeen years of age older, and sixty pounds heavier…. OFFICER OLIVER failed to include the male suspect and PLAINTIFF's description in the Request for Warrant, so that the discrepancy could be documented… Id. at ¶¶(b-d).

Aside from being conclusory in nature (discussed below), these allegations

ignore the fact that the WCPO was provided with Mr. Walker's description of the

assailant, as well as Plaintiff's age, physical characteristics, and image. Ex. "X".[13]

> PLAINTIFF was not seen on the 'green light' camera at the BP gas station and the male suspect was on the video footage… [and] That the male suspect was seen earlier that day speaking to the woman on video footage. ECF No.: 1, Pg. ID 8 at ¶¶35(e, h).

Here, Plaintiff assumes that Ofc. Oliver knew, despite Mr. Walker's identification,

that Plaintiff was not the male suspect seen on surveillance from Jan. 29, and again

ignores that these videos were provided to the WCPO. Ex. "H" at Pgs. 104, 109-110.

> PLAINTIFF had purchased the vehicle from two individuals (Gooch and Lawrence) and had paperwork inside the recovered-stolen vehicle to prove it… [and] PLAINTIFF had paperwork inside the vehicle at the time of PLAINTIFF's arrest. ECF No.: 1, Pg. ID 8 at ¶¶35(f, g).

---

[13] At Pgs. 5, 7, 18, 22-23, 26, 37-39, 44, 48-50, 53-56, 64, 66-67, 74-76, 81, 85-87, 94, 104, 109-110.

Again, this assumes Plaintiff's honesty during his interrogation in terms of how he came into possession of the vehicle and, more importantly, ignores that a recording of the interrogation was also provided to the WCPO. Ex. "H" at Pgs. 21, 55.

It is also suggested that Plaintiff didn't match Mr. Walker's description of the carjacker.  However, this must be judged against the following: i) Mr. Walker was drinking on the night of the carjacking, suspecting he may also have been drugged; ii) the carjacking occurred at night; iii) the assailant was wearing a jacket; and iv) Mr. Walker was staring down the barrel of a gun when he viewed the carjacker. Despite this, Mr. Walker stated that he'd recognize the assailant and identified Plaintiff when shown a line-up with Plaintiff's image. Exs. "A-D, F, and H".

This is not to concede that Plaintiff did not match Mr. Walker's description of the carjacker: a light-skinned black male, 5'9" or 5'10", with a thin moustache and full beard. Ex. "X" at Pg. 7.  Plaintiff is a 5'10", light-skinned black male, with a thin moustache and full beard.  Id. at Pgs. 5, 53. So, aside from age, build, and hairstyle, all of which must be considered against the factors noted above.

1) **SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF OFC. OLIVER AS TO COUNT II (FABRICATION OF EVIDENCE) AS:**

Plaintiff's Fabrication of Evidence and Malicious Prosecution claims are both premised on allegations that Ofc. Oliver presented a photo line-up containing Plaintiff's image, despite 'knowing' that Plaintiff did not match Mr. Walker's description of the carjacker. ECF No.: 1 at Pg. IDs. 13-16 at ¶¶ 57-58, 64.

11

**To the extent that this claim is brought as a 14th Amendment Claim, the alleged conduct did not affect a Jury Decision.**

The basis of a fabrication-of-evidence claim is that defendant knowingly fabricated evidence against a plaintiff, and that there is a reasonable likelihood that the evidence may have affected the judgment of the jury. *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017). However, a Plaintiff seeking relief for his pretrial detention pursues a fabrication-of-evidence claim under the 4th Amendment, which allows an individual to pursue such a claim even if the criminal action does not go to trial. See, *Manuel v. City of Joliet*, 137 S.Ct. 911, 920 (2017). "By contrast ... once a trial has occurred, the 4th Amendment drops out: A person challenging the sufficiency of the evidence to support both a conviction and any ensuing incarceration does so under the Due Process Clause of the 14th Amendment." *Id*. at 920, n.8. As the charges against Plaintiff were dismissed before Trial, the relief available to him is limited to his pretrial detention under the 4th Amendment.

**Ofc. Oliver did not Fabricate Evidence.**

What evidence did Ofc. Oliver fabricate?  In the legal arena, 'fabricate' is most often used in an underhanded sense, to make up for the purpose of deception. *Adonizio v. Credit Control Servs.,* 2023 WL 21953, at *7 (M.D. Fla. Jan. 3, 2023) [Ex. "II"] (citation omitted). See also, *Fabricate, Black's Law Dictionary* (9th ed. 2009) ["To invent, forge, or devise falsely"]."Evidence" is any species of proof, or probative matter, legally presented at trial of an issue, by act of parties and through

12

medium of witnesses, records, documents, exhibits, [etc.], for purpose of inducing belief in minds of court or jury as to their contention. *In re Roberts*, 193 B.R. 828 (Bankr. W.D. Mich. 1996).

Plaintiff was apprehended driving the stolen Malibu. Ex. "L". Ofc. Oliver showed Mr. Walker a line-up containing Plaintiff's image. Ex. "F" at Pg. 3; Exs. "O-P". Mr. Walker positively identified Plaintiff as the carjacker. *Id*. Ofc. Oliver provided the WCPO with Mr. Walker's description of his attacker, Mr. White's physical characteristics, and surveillance images of the male suspect. See FN 13.[14] Furthermore, to the extent Plaintiff bases this claim on alleged omissions in the "Details of Investigation" section of Ofc. Oliver's Investigator's Report (Original or Revised), rather than the substantive evidence uncovered during her investigation and summarized in the "Details of Investigation," it should be emphasized that Ofc. Oliver's s Details of Investigation," is not, itself, "evidence." Quite simply, Ofc. Oliver did not "fabricate" anything, let alone "evidence."

To the extent this claim is premised on a 'fabrication-by-omission' theory, the opinion in *Davenport v. New York*,[15] although not binding upon this Court, is instructive, nonetheless. In *Davenport*:

---

[14] As noted, the Jan. 29 surveillance was not provided until shortly after the Warrant had been approved, but still over a week before the Probable Cause Conference on Feb. 13. ECF No.: 1, Pg. ID 9 at ¶ 39; see also, AVERT Email, Ex. "JJ".

[15] 2017 WL 4356883 (E.D.N.Y. Sept. 28, 2017) [Ex. "KK"].

A citizen reported an alleged pickpocketing, describing the perpetrator as a white 30 year-old Hispanic man with short brown hair, approximately 6'0" and 180 pounds, earing beige T-shirt or Tank Top.

During the ensuing investigation, surveillance video of the event was uncovered. After obtaining the video, the investigator asked a colleague to review the video with him to help identify the alleged perpetrator.

The assisting officer told the investigator that the suspect looked like an individual whom he'd previously arrested ("Plaintiff"). Thereafter, the victim was shown a line-up containing Plaintiff's image and made a positive identification.  At the time of the pickpocketing, Plaintiff was of average build, bald, 5'4" and approximately 150 pounds, and although he did not identify as Hispanic, described his complexion as brown skin.

Months later, Plaintiff was arrested and charged. The investigator did not recall whether he brought the discrepancies between the victim's description of the perpetrator and Plaintiff's appearance to the prosecutor's attention, but the prosecutor did have a copy of the victim's complaint which included her description of the perpetrator.

After the criminal charges were dismissed, filed suit … alleging in pertinent part that the investigator had violated Plaintiff's rights by failing to provide certain evidence to the Prosecutor's Office. _Id_. at 1-5, 18 [summ].

Addressing the Fabrication of Evidence claim, the _Davenport_ Court explained:

Fabrication by omission is one way to establish a fabrication of evidence claim.

Nevertheless, Plaintiff's claims fail because he does not present evidence that the investigator forwarded incomplete evidence to the Prosecutor and the Prosecutor had a copy of the complaint filed with the police which included the victim's description of the perpetrator. Therefore, Plaintiff's omission theory for his fabrication of evidence claim fails because the record establishes that the investigator did not omit any evidence when he forwarded the case to the prosecutor. _Id_. at 19 [summ].

14

There is no reason to deviate from this reasoning here. Ofc. Oliver provided all information in her possession, **including** the witnesses' description of the carjacker and Plaintiff's physical attributes (see, FN 13), and as additional information became known (Exs. "BB" and "JJ"), that too, was promptly sent to the WCPO. Summary Judgment should therefore be granted, particularly in this case where it is shown that APA Garcia, **did not** simply rely on Ofc. Oliver's "Details of Investigation," but reviewed the underlying evidence uncovered during the investigation and instructed Ofc. Oliver to revise her Investigator's Report. Ex. V. See also, *Woodruff v. Oliver*, 2025 WL 2231045, at *4 (E.D. Mich. Aug. 5, 2025) [Ex. "LL"].[16]

Separately, Plaintiff does not allege that Mr. Walker failed to identify Plaintiff when shown the line-up,[17] that Mr. Walker was coerced into making an identification, or that the line-up was unduly suggestive - at least, no such allegations appear in the Complaint. However, if and to the extent such claims are being made, Defendants note that there is **zero** evidentiary support for such allegations. "A party opposing [] summary judgment must designate specific facts [] on which the jury

---

[16] *Companion case*. "[T]he Court noted that there are two different versions of the warrant request in the record … Defendant submitted supplemental briefing [] demonstrating that the warrant request attached to Plaintiff's complaint was the final version. Plaintiff does not dispute that this is the final version."

[17] "**After VICTIM picked PLAINTIFF from the photo line-up**…" ECF No.: 1, Pg. ID 6-7 at ¶¶ 30-31 (**emphasis added**).

15

could reasonably find for the plaintiff." *Muhammad v. Close,* 379 F.3d 413, 416 (6th Cir. 2004). However, even if a modicum of such evidence existed, such allegations would be insufficient to survive Summary Judgment in this case.

Due process requires that the procedure for making an identification not be unduly suggestive and the identification be sufficiently reliable. *Williams v. Lavigne,* 209 F.App'x. 506, 508 (6th Cir. Dec. 22, 2006). However, "a suggestive pre-indictment identification procedure does not in itself intrude upon a constitutionally protected interest." *Hutsell v. Sayre*, 5 F.3d 996, 1005 (6th Cir. 1993). To rise to the level of a constitutional violation actionable under § 1983, the evidence obtained through a line-up must be used at trial. *Id*. at 1005. So again, because the charges against Plaintiff were dismissed before Trial, and for those reasons previously discussed, Summary Judgment in favor of Ofc. Oliver is necessary and appropriate.

**The unlawfulness of the alleged misconduct was not clearly established and Ofc. Oliver is entitled to Qualified Immunity?**

Incorporating the preceding discussion, *even if*, Ofc. Oliver 'fabricated' 'evidence' by including Plaintiff's image in the photo line-up, or by failing to shine a spotlight on the *alleged* discrepancies in the physical description of the carjacker and Plaintiff, **and** *assuming* such 'fabrication' of evidence rises to the level of a constitutional violation, Ofc. Oliver is nonetheless entitled to Summary Judgment.

Under the doctrine of qualified immunity, courts may not award damages against a government official unless the official violated a constitutional right and the right

16

was clearly established at the time. *Lane v. Franks*, 573 U.S. 228, 243 (2014). To be "clearly established," a law must be so clear that every reasonable official would understand the unlawfulness of his conduct. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). It must be "settled law" [*Hunter v. Bryant*, 502 U.S. 224, 228 (1991)], dictated by controlling authority or a robust consensus of persuasive authority. *Wilson v. Layne*, 526 U.S. 603, 617 (1999). The legal principle must clearly prohibit particular conduct under particular circumstances. This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. 7, 13 (2015). Courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances [they] faced." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). A rule is too general if the unlawfulness of the conduct "does not follow immediately from the conclusion that the rule was firmly established." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

Defendant is unaware of **any** precedent providing notice that placing Plaintiff's image into a photo line-up under the circumstances existing here was unlawful. To overcome a claim of qualified immunity, "plaintiff [must show] that the defendant is not entitled to qualified immunity"  and to show "that a right is clearly established." *Everson v. Leis,* 556 F.3d 484, 494 (6th Cir. 2009).

Similarly, no precedent has been located finding potential liability of an officer for the fabrication of evidence, where an officer provides the prosecutor with all

17

material information and evidence, but fails to direct attention to a specific fact in the Investigator's Report.[18] In fact, the opposite appears true.

> Here, [the officer] conducted an investigation and turned over her investigation files to the prosecutors. She did not fabricate evidence; she did not falsely claim to have evidence that did not exist; she did not mislead the prosecutors into believing [something known to be untrue]. **The challenged omission is simply the failure to point out the absence of evidence** … **Moreover, any reasonable police officer would have presumed that it was the prosecuting attorney's job to verify the existence of sufficient evidence to support all of the necessary elements of a particular offense before presenting the charge**[**s**]… In the absence of controlling law to the contrary, the court cannot find that [the Officer], by omitting to point out an absence of evidence, committed acts that violated clearly established law. _Reguli v. Hetzel_, 2025 WL 1524495, at *10 (M.D. Tenn. May 28, 2025) [**emphasis added**] (Ex. "MM"). See also, _Davenport_, supra.

_Perhaps_, the **only** exception arises where the officer, makes **deliberately** false statements and/or **intentional** omissions in the Warrant Application that were **material** to the probable cause determination, **and** the Prosecutor, in fact, relies on the false statement or intentional omission. _Zavatson v. City of Warren, Michigan_, 714 F. App'x 512, 521-22 (6th Cir. 2017) [addressing Malicious Prosecution claim]. However, unlike the officer in _Zavatson_, there is no evidence that Ofc. Oliver made any **deliberately** false statements in her Investigator's Report. Ex. "F". While she did not specifically direct APA Garcia's attention to alleged discrepancies in the physical descriptions of the carjacker and Plaintiff, she did not conceal them either.

---

[18] a/k/a "Warrant Request," "Request for Warrant," "Warrant Application," etc.

Moreover, Plaintiff offers no evidence that this "omission" was either intentional, or material to APA Garcia's probable cause determination. In fact, Plaintiff does not even allege that APA Garcia was unaware of the alleged discrepancy in physical characteristics. For these combined reasons, Summary Judgment is appropriate.

**2)** **SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF OFC. OLIVER AS TO COUNT III (MALICIOUS PROSECUTION) AS:**

In the interests of brevity and given the overlap in § 1983 "Fabrication of Evidence" and "Malicious Prosecution" claims, generally and this case specifically, Defendants incorporate by reference the arguments stated in preceding discussion regarding Plaintiff's Fabrication of Evidence claim. See, _Caminata v. Cty. of Wexford_, 664 Fed.Appx. 496, (6th Cir. 2016).

To prevail in a § 1983 Malicious Prosecution claim, Plaintiff must establish that: i) a prosecution was initiated against the plaintiff and defendant made, influenced, or participated in the decision to prosecute; ii) there was a lack of probable cause for the prosecution; iii) as a consequence of a legal proceeding, plaintiff suffered a deprivation of liberty [] apart from the initial seizure; and  iv) the criminal proceeding resolved in the plaintiff's favor. _Sykes v. Anderson_, 625 F.3d 294, 308–09 (6th Cir. 2010) [citations and quotations omitted].

**There was Probable Cause for Plaintiff's Arrest and Ofc. Oliver did not "Participate" in the decision to prosecute.**

19

As Plaintiff did not raise a False Arrest claim, it appears that probable cause for his *arrest*, while driving the stolen Malibu, is conceded. This alone makes Summary Judgment appropriate. "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense [], **the decision whether or not to prosecute, and what charge to file** … generally rests **entirely** in his discretion." <u>*Bordenkircher v. Hayes*, 434 US 357, 364 (1978)</u> [**emphasis added**]. If this concession does not dispose of this claim entirely, the issue becomes whether there was probable cause to submit the Investigator's Report (<u>Ex. "F"</u>) to the WCPO seeking Plaintiff's arrest.

As a preliminary matter, in the related companion case, *Woodruff v. Oliver*, the Court found that probable cause existed for the arrest of Ms. Woodruff, believed to be the female accomplice, despite the only evidence linking her to the carjacking, was her identification by Mr. Walker in a photo line-up, contemporaneously with Plaintiff, who was also found driving the stolen vehicle less than four (4) days after the carjacking. <u>Generally, *Woodruff v. Oliver*, Ex. "LL". See also, Exs. "O-P" and "X" at Pg. 57</u>. In that case, Ofc. Oliver argued, as she does here, that:

> An eyewitness identification will constitute sufficient probable cause unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation. This comports with the general notion that, since eyewitnesses' statements are based on firsthand observations, they are generally entitled to a presumption of reliability and veracity. *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999).

20

"[P]robable cause does not require perfection, and witness identifications are entitled to a presumption of reliability and veracity." _Legenzoff v. Steckel_, 564 F. App'x 136, 143 (6th Cir. 2014). "[W]hen the informant is the victim of the crime it need not be shown by other facts, that she is a reliable informant" [_United States v. Amerson_, 38 F.3d 1217 (6th Cir. 1994) [citation omitted] and "when an officer has received his information from some person—normally the putative victim or an eyewitness—who it seems reasonable to believe is telling the truth, he has probable cause." _Id_. (citations and quotations omitted).

Here, the **only** reason to question the reliability of Plaintiff's identification was the alleged discrepancies in the physical descriptions of the assailant and Plaintiff. Specifically, the estimated age of the assailant [25-27 (Ex. "D")], weight [135-150lbs (_Id._)], and hairstyle [short braids (Ex. "B")], versus Plaintiff's age [42 (Ex. "N")], weight [190lbs (Ex. "N")], and hairstyle [bald (Ex. "O" at Pg. 4)].[19]

But this must be weighed against Mr. Walker accurately describing Plaintiff's appearance in **all** other respects, stating he'd recognize the carjacker if he saw him (Ex. "D"), identifying Plaintiff in the line-up in the presence of an attorney (Ex. "F" at Pg. 3), and that Plaintiff was arrested driving the stolen vehicle days later.

---

[19] Notably, Mr. Walker does not describe the assailant's hairstyle in his discussion with Det. Fletcher on the night of the carjacking. Compare Exs. "B-D".

Again, "probable cause does not require perfection and witness identifications are entitled to a presumption of reliability and veracity." *Legenzoff*, supra at 143. Thus, given the totality of the circumstances, probable cause existed, not only for Plaintiff's arrest, but also to believe that he was responsible for the carjacking and because probable cause existed, Plaintiff cannot satisfy this essential element of his malicious prosecution claim.[20]

*Even if* probable cause was lacking to pursue the carjacking charges, Plaintiff's Malicious Prosecution claim fails regardless, as Ofc. Oliver did not have actionable participation in APA Garcia's decision to charge Plaintiff. For purposes of a Malicious Prosecution claim, an officer does not commence a criminal proceeding merely by providing the prosecution with the officer's truthful materials. *Sykes,* supra at 314. To be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015) [citation omitted]. There must be "some element of blameworthiness or culpability in the participation," as "truthful participation in the prosecution decision is not actionable." *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015).

> [C]ourt's … should [limit] malicious prosecution claim[s] to those cases in which the subject officer acted as the complaining witness who was the originating point of the investigation and prosecution; and

---

[20] *At the very minimum*, it was objectively reasonable for Ofc. Oliver to believe there was sufficient probable cause to pursue charges from the WCPO.

22

whom knowingly fabricated material inculpatory facts or knowingly omitted material exculpatory facts and thereby manufactured probable cause, to the extent that it effectively subverted the prosecutor's independent decision making process by leaving the prosecutor nothing to consider; and whose word was actually relied upon by the prosecutor in charging and continuing a prosecution. *Sykes*, surpa at 308 n.5.

As addressed previously, there is no evidence that Ofc. Oliver fabricated **any** material inculpatory facts no omit material exculpatory facts to manufacture probable cause and, she could not have subverted APA Garcia's decision-making process when, she revised her Investigator's Report to emphasize information found in the underlying investigatory materials at his request.

**The unlawfulness of the alleged misconduct was not clearly established and Ofc. Oliver is entitled to Qualified Immunity.**

Even where probable cause based on an identification is later be found to be lacking, officers are entitled to qualified immunity if all pertinent information relating to an identification was provided to the prosecutor.

> The prosecutor, having all the information [the officer] had about the [identification], determined probable cause existed. Plaintiff cannot show that [the officer] knowingly or with a reckless disregard for the truth procured a warrant [] or knew the warrant was based upon [] false information or a material omission. … [the officer] is entitled to qualified immunity... *Ruble v. Escola*, 898 F. Supp. 2d 956, 974 (N.D. Ohio 2012). See also, *Davenport*, supra.

An officer is entitled to qualified immunity if a reasonable officer could have believed that their actions were lawful based on clearly established law and the information the officer possessed. *Anderson*, supra at 641. A 'reasonable' belief can

23

be a mistaken belief, and the fact that it turned out to be mistaken does not undermine its reasonableness at the time of the action. *Davenport v. Causey*, 521 F.3d 544, 552 (6th Cir. 2008). "Qualified immunity [] applies unless it is obvious that no reasonably competent official would have concluded that the actions taken were unlawful." *Chappell v. Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). Again incorporating Defendant's prior arguments, no clearly established precedent gave Ofc. Oliver notice that her actions were unlawful, entitling her to Summary Judgment.

**3) SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF OFC. OLIVER AS TO COUNT IV (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS) AS HER CONDUCT WAS OBJECTIVELY REASONABLE, RATHER THAN EXTREME AND OUTRAGEOUS AND SHE IS ENTITLED TO QUALIFIED IMMUNITY?**

As Ofc. Oliver's acted lawfully, Plaintiff's Intentional Infliction of Emotional Distress ("IIED") claim fails as a matter of law. An officer making an arrest supported by probable cause does not act in an extreme or outrageous manner and cannot be held liable for IIED as a matter of law. *Walsh v. Taylor*, 263 Mich. App. 618, 634 (2004); *Fleming v. Scruggs*, 465 F. Supp. 3d 720, 748 (E.D. Mich. 2020).

Separately, the elements of IIED are: i) extreme and outrageous conduct; ii) intent or recklessness; iii) causation; and iv) severe emotional distress. *Roberts v. Auto-Owners Ins Co.*, 422 Mich. 594, 602 (1985). "The threshold for extreme and outrageous conduct is high," and "[n]o cause of action will necessarily lie even where a defendant acts with tortious or even criminal intent." *VanVorous v. Burmeister*, 262 Mich. App. 467, 481 (2004). Generally, an IIED claim is only made

24

if an officer knowingly procured an arrest or charges based on false or fabricated evidence. *Akima v. Peca*, 652 F. Supp. 3d 848, 864 (E.D. Mich. 2023). As discussed at length, *at worst*, Ofc. Oliver failed to specifically direct APA Garcia to certain discrepancies between the assailant and Plaintiff's physical description. **Never** has an IIED claim survived where the "extreme and outrageous conduct" was so limited, nor in the absence of any evidence of "intent or recklessness."

## RESERVATION

To the extent that Plaintiff purports to make any claim other than those addressed above, there are no genuine issues of material fact, and Ofc. Oliver is entitled to judgment as a matter of law on these claims also. Moreover, Ofc. Oliver is entitled to qualified immunity because there was no constitutional violation, and even if there had been a constitutional violation, it was not a clearly established right.

## CONCLUSION

**WHEREFORE**, Defendant, LASHAUNTIA OLIVER, respectfully requests that this Honorable Court grant Defendant's Motion for Summary Judgment and further grant any other relief deemed just and appropriate.

Respectfully Submitted,
CITY OF DETROIT LAW DEPARTMENT

Dated: March 13, 2026            /s/   Gregory B. Paddison
                                       Gregory B. Paddison (P75963)
                                       Attorney for Defendant

25

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2026, I electronically filed the foregoing with the clerk of the Court using the ECF system which will send notification and a copy of this filing to the parties of record.

/s/ Chelsea Grimaldi