## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DANIEL WHITE,
    an individual,

        Plaintiff,

V

CITY OF DETROIT
a municipal corporation,

LaSHAUNTIA OLIVER,
City of Detroit Police Officer,
Individually, and in her Official Capacities,

        Defendants.

Case No. 2:25-cv-10306
Hon. Mark A. Goldsmith

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

## <u>PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

1. Plaintiff admits the allegation contained in Paragraph 1

2. Plaintiff admits the allegation contained in Paragraph 2.

3. Plaintiff denies the allegation contained in Paragraph 3.

4. Plaintiff denies the allegation contained in Paragraph 4.

WHEREFORE, Plaintiff ask this Honorable Court to deny Defendant's Motion

for Summary Judgment.

April 8, 2026

        /s/<u>Ivan L. Land</u>
          Ivan L. Land

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DANIEL WHITE,
     an individual,

       Plaintiff,

V

CITY OF DETROIT
a municipal corporation,

LaSHAUNTIA OLIVER,
City of Detroit Police Officer,
Individually, and in her Official Capacities,

       Defendants.

Case No. 2:25-cv-10306
Hon. Mark A. Goldsmith

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COMES Plaintiff, Daniel White, through his attorneys, the Law Offices of Ivan L. Land, P.C., and states as follows for his Brief in Opposition to Defendant's Motion for Summary Judgment.

ii

# TABLE OF CONTENTS

*PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT* ..................................................................................................................... ii

*TABLE OF CONTENTS* ........................................................................................................ iii

*LOCAL RULE CERTIFICATION* ...................................................................................... iv

*ISSUES PRESENTED* ............................................................................................................ v

*TABLE OF AUTHORITIES* ................................................................................................ vi

*STANDARD OF REVIEW* .................................................................................................. vii

*COUNTER-STATEMENT OF MATERIAL FACTS* .......................................................... 1

*ADDITIONAL MATERIAL FACTS* ..................................................................................... 3

*ARGUMENT* ........................................................................................................................... 3

   1.   **SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF OFC. OLIVER AS TO COUNT I (FABRICATION OF EVIDENCE)?** ............................................................ 3

   2.   **SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF OFC. OLIVER AS TO COUNT III (MALICIOUS PROSECUTION)?** ..................................................... 8

      A.   A prosecution was initiated against Plaintiff Daniel White, and Defendant Officer Oliver made, influenced, or participated in the decision to prosecute. .................................... 9

      B.   There Was a Lack of Probable Cause to Support the Prosecution ................................. 11

      C.   As a Consequence of the Legal Proceeding, Plaintiff Suffered a Deprivation of Liberty Apart from the Initial Seizure ........................................................................................... 20

      D.   The Criminal Proceeding Was Resolved in Plaintiff Daniel White's Favor ................. 21

   3.   **SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF OFC. OLIVER AS TO COUNT IV (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)?** ...................... 22

*CERTIFICATE OF SERVICE* .............................................................................................. 25

## LOCAL RULE CERTIFICATION

LOCAL RULE CERTIFICATION: I, Ivan L. Land, certify that this document complies with Local Rule 5.1(a) including double spacing (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for nonproportional fonts) or 14-point (for proportional fonts). I certify that it is the appropriate length.

## ISSUES PRESENTED

1.  **SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF OFC. OLIVER AS TO COUNT I (FABRICATION OF EVIDENCE)?**

    Plaintiff Responds: No.
    Defendants Respond: Yes.

2.  **SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF OFC. OLIVER AS TO COUNT III (MALICIOUS PROSECUTION)?**

    Plaintiff Responds: No.
    Defendants Respond: Yes.

3.  **SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF OFC. OLIVER AS TO COUNT IV (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)?**

    Plaintiff Responds: No.
    Defendants Respond: Yes.

v

# TABLE OF AUTHORITIES

**Cases**

*Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999) .......................................... 5, 19, 20

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ........................................ viii

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ................................................... viii

*Chiaverini v. City of Napoleon*, 602 U.S. 556, 563–64 (2024) .......................... 17, 18, 20

*Cox v. Williams*, 233 Mich. App. 388, 393; 593 N.W.2d 173 (1999) ........................... 21

Franks v. Delaware, 438 U.S. 154, 155–56 (1978)................................................. 11, 16

*Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000).......................... 5, 8, 20, 21

Graham v. Ford, 237 Mich App 670, 674; 604 NW2d 713 (1999) .......................... 22, 24

*Gregory v. City of Louisville*, 444 F.3d 725, 737–38 (6th Cir. 2006).................... 3, 7, 8

*Johnson v. City of Cincinnati*, 310 F.3d 484, 493 (6th Cir. 2002)............................... 20

*Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015) ............................................. 20

*Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) ................................. 16, 17, 18, 20

Linebaugh v. Sheraton Michigan Corp., 198 Mich App 335, 342–343; 497 NW2d 585 (1993) . 22

*Malley v Briggs*, 475 U.S. 335, 345 (1986) ............................................................... 12

*Manuel v. City of Joliet*, 580 U.S. 357, 367–68 (2017) ................................................ 7

*Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017)................................................... 8

*Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008) .................................... 6

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009)...................................................... viii

*Perry v. New Hampshire*, 565 U.S. 228, 238–39 (2012)............................................. 6

Roberts v. Auto-Owners Ins. Co., 422 Mich 594, 603; 374 NW2d 905 (1985).......................... 22

Sanders v. Jones, 845 F.3d 721, 731 (6th Cir. 2017)................................................ 10

*Simmons v. United States*, 390 U.S. 377, 384 (1968) ................................................. 6

*Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) ................................. passim

*Thompson v. Clark*, 596 U.S. 36, 142 S. Ct. 1332, 1341 (2022) .................................. 21

Walsh v. Taylor, 263 Mich App 618, 634; 689 NW2d 506 (2004)............................... 22

Webb v. United States, 789 F.3d 647, 660 (6th Cir. 2015) ......................................... 10

**Other Authorities**

Doe v. Mills, 212 Mich App 73, 91; 536 NW2d 824 (1995)........................................ 22

Restatement Torts, 2d, § 46 ..................................................................................... 22

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................. viii

## STANDARD OF REVIEW

Summary judgment is appropriate only where there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence in the light most favorable to Plaintiff and draw all reasonable inferences in Plaintiff's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Supreme Court has made clear that summary judgment is proper only where the record demonstrates that a party cannot establish an essential element of its claim or defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). On qualified immunity, the Court asks whether, taking the facts in Plaintiff's favor, Defendants violated a constitutional right and whether that right was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

## COUNTER-STATEMENT OF MATERIAL FACTS

1.     Plaintiff admits the allegations contained in Paragraph 1.

2.     Plaintiff admits the allegations contained in Paragraph 2.

3.     Plaintiff admits the allegations contained in Paragraph 3.

4.     Plaintiff admits the allegations contained in Paragraph 4.

5.     Plaintiff admits the allegations contained in Paragraph 5.

6.     Plaintiff admits the allegations contained in Paragraph 6.

7.     Plaintiff admits the allegations contained in Paragraph 7.

8.     Plaintiff admits the allegations contained in Paragraph 8.

9.     Plaintiff admits the allegations contained in Paragraph 9.

10.    Plaintiff admits the allegations contained in Paragraph 10.

11.    Plaintiff admits the allegations contained in Paragraph 11.

12.    Plaintiff admits the allegations contained in Paragraph 12.

13.    Plaintiff admits the allegations contained in Paragraph 13.

14.    Plaintiff admits the allegations contained in Paragraph 14.

15.    Plaintiff admits the allegations contained in Paragraph 15.

16.    Plaintiff admits the allegations contained in Paragraph 16.

17.    Plaintiff admits the allegations contained in Paragraph 17.

18.    Plaintiff admits the allegations contained in Paragraph 18.

19.     Plaintiff contests the allegations contained in Paragraph 19. There is no evidence in the record that proves Officer Oliver sent the corrected information back to APA Garcia.

20.     Plaintiff contests the allegations contained in Paragraph 20. There is no evidence in the record that proves that the Wayne County Prosecutor received the corrected warrant.

21.     Plaintiff contests the allegations contained in Paragraph 21. Plaintiff was confused as to whether Officer Oliver was Hispanic or Black (See ECF 26-30, Page ID. 520, Lines 10-22) (See Exhibit 2, Daniel White's Affidavit and Officer Oliver's Photo).

22.     Plaintiff contests the allegations contained in Paragraph 22.

23.     Plaintiff contests the allegations contained in Paragraph 23. There was documentation in the glovebox of the vehicle that Defendant failed to provide through the course of discovery (See ECF No. 26-28, Page ID. 461).

24.     Plaintiff admits the allegations contained in Paragraph 24.

25.     Plaintiff contests the allegations contained in Paragraph 25.

26.     Plaintiff admits the allegations contained in Paragraph 26.

27.     Plaintiff admits the allegations contained in Paragraph 27.

2

28.     Plaintiff contests the allegations contained in Paragraph 28. There is nothing in the record that states that Plaintiff is a member of the "82 Headbangers" Gang.

### ADDITIONAL MATERIAL FACTS

1.      Officer Oliver and Officer Greenwald came to the Detroit Detention Center on February 2, 2023. This is when Officer Oliver told Mr. White that she was aware that he was not the perpetrator of the robbery and carjacking because he was not on the Green Light video (See Exhibit 1, Daniel White's Interrogation Video).

### ARGUMENT

**1.      SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF OFC. OLIVER AS TO COUNT I (FABRICATION OF EVIDENCE)?**

Officer Oliver's argument improperly narrows fabrication of evidence to only affirmative false statements or omissions to a prosecutor. That is not the law. An officer violates the Constitution when she knowingly creates or uses false or misleading evidence, or acts with reckless disregard for the truth in initiating a prosecution. *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010).

The Sixth Circuit has made clear that fabrication includes not only outright falsification, but also the use of evidence that the officer knows is unreliable or misleading. *Gregory v. City of Louisville*, 444 F.3d 725, 737–38 (6th Cir. 2006). Viewing the record in the light most favorable to Plaintiff, a reasonable jury could

3

conclude that Officer Oliver knowingly advanced Plaintiff as the perpetrator despite evidence establishing that he was not the individual responsible for the offense.

The record reflects that Plaintiff was arrested while driving the vehicle at issue with his seven-year-old son present, and immediately provided a consistent and verifiable explanation for his possession of the car (See Exhibit 1, Daniel White's Interrogation Video). He informed Officers Gray and Officer Glover during his interrogation that he had purchased the vehicle for $2,000, and that documentation of that purchase was located in the glovebox, and that he owned multiple other registered vehicles (See Exhibit 1, Daniel White's Interrogation Video). These statements were corroborated by the presence of paperwork in the vehicle and by the absence of any logical motive to commit a carjacking under those circumstances (ECF No. 26-28 PageID.461). Despite this, Plaintiff was charged with carjacking rather than Receiving and Concealing Stolen Property. Plaintiff explicitly suggested that if anything, the facts would support receiving and concealing stolen property (See Exhibit 1, Daniel White's Interrogation Video). A reasonable jury could conclude that the decision to pursue violent felony charges in the face of these facts reflects a predetermined narrative rather than an objective investigation.

More importantly, Plaintiff has presented evidence that Officer Oliver affirmatively knew he was not the perpetrator at the time of his arrest (See Exhibit

4

2, Daniel White's Affidavit and Officer Oliver's Photo)[1]. Both Plaintiff and his sister testified that Officer Oliver stated that she knew it was not Plaintiff that committed the carjacking and robbery because the gas station had surveillance footage of the actual suspect, and Plaintiff was not involved, yet detained him anyway because he was found in the vehicle (See Exhibit 1, Daniel White's Interrogation Video) (ECF No. 26-31, PageID 562, Lines 8-21). This testimony is not speculative. It is direct evidence of knowledge of innocence. If credited, it establishes that Officer Oliver proceeded with the investigation and prosecution despite knowing Plaintiff was not the individual depicted in the surveillance footage. That alone is sufficient to sustain a fabrication-of-evidence claim under clearly established Sixth Circuit law.

Even setting aside those statements, the objective evidence further demonstrates fabrication or, at minimum, reckless disregard for the truth. The victim's description of the perpetrator materially differed from Plaintiff's appearance in terms of age, weight, and hairstyle (See ECF No. 26-24, PageID. 305-306) (See ECF No. 26-14, PageID. 274). Such discrepancies are not minor. They go directly to the reliability of any identification and the existence of probable cause. The Sixth Circuit has held that officers may not ignore evidence that negates probable cause or "turn a blind eye" to facts suggesting innocence. *Gardenhire v.*

---

[1] Officer Oliver admitted during her deposition that the photograph attached as Exhibit 2 depicts her (See Exhibit 4, Officer Oliver's Deposition, Page 35, Lines 4-6).

*Schubert*, 205 F.3d 303, 318 (6th Cir. 2000); *Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999). Where identification evidence is contradicted by objective inconsistencies, the issue is one for the jury. *Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008). A reasonable jury could conclude that Officer Oliver disregarded these discrepancies and instead advanced Plaintiff as the suspect despite the mismatch.

The fabrication is further demonstrated by the manner in which the identification evidence was created. Plaintiff was placed into a photo lineup as the suspected perpetrator even though, according to the record, Officer Oliver had reason to believe that he was not the individual captured on surveillance footage (See Exhibit 3, Photo Lineup). A lineup is not neutral where the officer already knows the individual included is not the perpetrator. In that circumstance, the lineup itself becomes manufactured evidence because it falsely communicates to the witness that the individual is a legitimate suspect. That is precisely what occurred here. The resulting identification was not independent evidence of guilt. It was the product of a process that a jury could find was knowingly or recklessly misleading.

Compounding this issue, the lineup was itself suggestive. Plaintiff's photograph was the only **vertical** image included, making him visually distinct from every other individual presented. Due process prohibits identification procedures that are unnecessarily suggestive and create a substantial likelihood of

6

misidentification. *Simmons v. United States*, 390 U.S. 377, 384 (1968); *Perry v. New Hampshire*, 565 U.S. 228, 238–39 (2012). A reasonable jury could conclude that presenting Plaintiff as the only visually distinct photograph in the lineup increased the likelihood that he would be selected, particularly where his appearance did not match the original description of the perpetrator. This is not a neutral identification procedure. It is evidence that could be found to have been constructed in a manner that steered the witness toward Plaintiff.

Officer Oliver's attempt to avoid liability by arguing that all evidence was provided to the prosecutor and that no material omissions occurred (See ECF No. 25 PageID. 235). That argument misses the point. This is not merely an omission case. It is an affirmative fabrication case. The constitutional violation arises from knowingly using false or misleading evidence to initiate a prosecution, not from whether additional information was also disclosed. An officer cannot insulate herself from liability by forwarding fabricated or misleading evidence along with other materials, as '[a]n officer cannot rely on a prosecutor's decision to prosecute when that decision was influenced by the officer's knowing misstatements or omissions.' *Gregory* at 758. The question is whether the evidence used to justify the seizure and prosecution was truthful and reliable. Here, a jury could conclude that it was not.

Finally, the fabricated evidence was not harmless. It directly resulted in Plaintiff's arrest, detention, and prosecution. The Supreme Court has recognized that

7

pretrial detention based on false or misleading evidence violates the Fourth Amendment. *Manuel v. City of Joliet*, 580 U.S. 357, 367–68 (2017). The Sixth Circuit likewise holds that a fabrication claim exists where the false evidence could influence the decision to prosecute. *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017). Here, the identification obtained through the lineup was central to the decision to charge Plaintiff with carjacking. That identification flowed from a process that a jury could find was knowingly or recklessly misleading, there is at minimum a genuine dispute of material fact.

Viewed as a whole, the record presents far more than a mere disagreement over investigative judgment. It presents evidence that Plaintiff was treated as the perpetrator despite known exculpatory evidence, that identification evidence was generated through a suggestive and potentially manipulated process, and that this evidence was used to support a criminal prosecution. Plaintiff's constitutional rights were violated, and the law was clearly established in *Gardenhire*, *Gregory*, *Simmons* and *Sykes* that is sufficient to preclude summary judgment on Plaintiff's claim as the evidence was false and misleading.

2.    **SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF OFC. OLIVER AS TO COUNT III (MALICIOUS PROSECUTION)?**

A claim for malicious prosecution requires Plaintiff to establish that: (A) a prosecution was initiated against him and that Defendants made, influenced, or participated in the decision to prosecute; (B) there was a lack of probable cause for

8

the prosecution; (C) as a consequence of the legal proceeding, Plaintiff suffered a deprivation of liberty apart from the initial seizure; and (D) the criminal proceeding was resolved in Plaintiff's favor. *Sykes* at 308–09.

**A.     A prosecution was initiated against Plaintiff Daniel White, and Defendant Officer Oliver made, influenced, or participated in the decision to prosecute.**

To succeed on his claim Plaintiff, Daniel White, must establish that a criminal prosecution was initiated against him and that Defendant Officer Oliver made, influenced, or participated in that decision. *Sykes at* 308.

Plaintiff was charged with Carjacking and Armed Robbery under Case #: 2305544001 D01 FY (See ECF No. 26-29, PageID. 463-466, Daniel White Register of Actions). There is no dispute that a criminal prosecution was initiated against Plaintiff.  Rather, the issue is whether Officer Oliver actively participated in and influenced that decision. Here, Officer Oliver did far more than passively relay information as she claims. She was the officer in charge (See Exhibit 4, Officer Oliver's Deposition, Page 17, Lines 17-19). She affirmatively shaped the prosecution by preparing and submitting a Referral Summary, advancing charges for carjacking and armed robbery, and presenting a narrative to the prosecutor that omitted critical exculpatory evidence and relied on unreliable evidence (See Exhibit 5, Referral Summary) (See ECF No. 26-6, PageID. 252-255, Request for Warrant). In the Referral Summary, Officer Oliver advanced a carjacking theory prior to

9

preparing a photo line-up for the victim to view. According to the Referral Summary, this information was submitted on 2/3/2023 at 12:00 a.m. (See Exhibit 5, Referral Summary). The photo line-up was not presented to the victim until 2:00 p.m. on 2/3/2023 almost 14 hours after the Referral Summary was submitted (ECF No. 26-16, PageID. 284).

"To be liable for participating in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Sanders v. Jones*, 845 F.3d 721, 731 (6th Cir. 2017) (quoting *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015)). Officer Oliver's conduct satisfies this standard. She did not simply present facts. She directed the course of the prosecution by pursuing charges unsupported by probable cause, failing to disclose material exculpatory evidence including the existence of a suspect who matched the victim's original description, and relying on a witness (victim) whose credibility was undermined by intoxication, inconsistencies, and admitted falsehoods. The victim claimed he had been drinking and he thought he had been drugged (See ECF No. 26-24, Page ID. 305-306). Furthermore, the victim failed to disclose in his initial interview with officers that he and the female subject had sexual intercourse (See ECF No. 26-24, PageID. 305-306). Then in a subsequent interview, the victim stated that he did have sexual intercourse with the female suspect (See ECF No. 26-8 PageID. 260). These inconsistencies created an admitted falsehood

10

which would have made a reasonable officer pause to investigate. This element has been satisfied as Officer Oliver actively participated.

**B.      There Was a Lack of Probable Cause to Support the Prosecution**

Probable cause was lacking because Officer Oliver initiated and continued the prosecution despite omitting material exculpatory evidence, ignoring readily available evidence pointing to another suspect, and relying on an unreliable and inconsistent witness (victim), all while failing to conduct even a minimal investigation that would have negated the charged offenses.

Probable cause fails where the omission of material facts are omitted from the Request for Warrant submission to the magistrate. This issue is governed by *Franks v. Delaware*, which holds that where an officer knowingly or recklessly omits material information, and the inclusion of that information would defeat probable cause, the warrant is invalid. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). The Sixth Circuit applies this same rule to omissions and requires courts to insert the omitted facts to determine whether probable cause still exists. *Sykes at 305*. If the omitted facts are inserted into the affidavit, and probable cause is not established - then probable cause was lacking from the outset.

Here, Officer Oliver omitted critical, outcome determinative facts from the Request for Warrant that would go directly to identity and reliability. She failed to disclose discrepancies between Plaintiff and the suspect's description, including

11

differences in age, hairstyle, and weight (See Exhibit 4, Officer Oliver's Deposition, Page 62, Lines 6-25; Page 63, Line 1).  She also failed to disclose in the Request for Warrant that there was an actual photograph of a suspect that matched the **exact** description and clothing originally given by the victim (See ECF No. 26-24, PageID. 403). These facts alone would have shifted the magistrate's focus away from Plaintiff and toward the true suspect. Instead, the lineup deviated from that original description, yet Plaintiff was still included and ultimately selected (See ECF No. 26-15, PageID 276-283). These omissions undermine the reliability of the identification and negated probable cause.

Officer Oliver's assertion that materials were not included in the Request for Warrant, but was included as attachments does not cure this defect (See Exhibit 4, Officer Oliver's Deposition, Page 30, Lines 20-25; Page 31, Lines 1-3).  Officers are required to present material facts in a manner that allows the magistrate to make an informed determination, not bury them in voluminous materials. *Sykes* at 305. This is particularly true where this record reflects that over 100 pages of material existed including videos, making it unreasonable to expect a magistrate to locate critical exculpatory facts (See ECF No. 26-24, PageID. 304-409).

> The analogous question in this case is whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. If such was the case, the officer's application for a warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest. It is true that in an ideal system an unreasonable request for a warrant would be

harmless, because no judge would approve it. But ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should. We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment. *Malley v Briggs*, 475 U.S. 335, 345 (1986).

The only charge potentially supported by the known facts was Receiving and Concealing Stolen Property. It was therefore not appropriate for Officer Oliver to seek a warrant for robbery or carjacking, as she lacked sufficient facts to support those charges. This is further confirmed by Chief White's statements regarding the lack of investigation in this case. (See Exhibit 6, Chief White Press Conference).[2]

Despite Officer Oliver's assertion that the necessary information was included as an attachment, key exculpatory evidence was never included because the evidence was not available, or at the time the Request for Warrant was submitted, the evidence was not ready.  Video footage from the gas station was not available from January 29, 2023, where the suspect was shown (See Exhibit 7, Video footage from January 29, 2023).  This video was requested to be extracted on February 3, 2023, but was not extracted until February 4, 2023, so it could not have been available when the Request for Warrant was submitted (ECF No. 26-10, PageID. 268)(ECF No. 26-11, Page ID. 271).

---

[2] *See Woodruff v. Oliver*, No. 25-1788 (6th Cir. filed 2025). The district court's decision in *Woodruff* is not binding authority on this Court, and the matter is currently pending before the United States Court of Appeals for the Sixth Circuit.

13

Furthermore, Plaintiff informed Officers Gray and Officer Glover when he was being interrogated on February 3, 2023 that he purchased the vehicle for $2,000 from an individual representing himself as Laurence Walker (Victim), and that documentation supporting that purchase was located in the glovebox (See Exhibit 1, Daniel White's Interrogation Video). Despite an Officer photographing paperwork contained in the glove box consistent with Plaintiff's statement (ECF No. 26-28, PageID 461), a subsequent photograph shows the glovebox without that paperwork (See ECF No. 26-28, PageID 462). The contents of the glovebox were never provided in discovery. This exculpatory evidence directly supports Plaintiff's explanation and negates any inference of carjacking or robbery. Plaintiff cannot be punished for Officer Oliver failing to preserve this most important information. Officer Oliver was aware of the information being in the glove box because she observed the interrogation of Plaintiff as it was happening (See Exhibit 4, Officer Oliver's Deposition, Page 20, Lines 8-11). Officer Oliver failed to have this information preserved (See Exhibit 4, Officer Oliver's Deposition, Page 22, Lines 9-13).

Also, the interrogation video was not available at the time the Request for Warrant was submitted to the magistrate (See ECF No. 26-26, Page ID. 411). The interrogation video is important because within 24 hours of Plaintiff's arrest, Plaintiff stated on video that Officer Oliver told his sister, Donna Jones, that she

14

knew Plaintiff did not commit the offenses because the actual suspect was captured on Green Light surveillance and Plaintiff was not seen on video. (See Exhibit 1, Daniel White's Interrogation Video); (See ECF No. 26-31, Page ID. 562 Lines 15-25 and ECF No. 26-31, Page ID. 564 Lines 9-12) (Donna Jones' Deposition).

The contents contained in the glove box have not been produced throughout the course of discovery, so this information was not attached as an attachment to the Request for Warrant as Officer Oliver is attempting to rely on. This also holds true for the interrogation video as it was not available when the Request for Warrant was submitted as no videos were attached (See ECF No. 26-26, PageID 411).

Also, Plaintiff informed Officer Gray and Officer Glover during the interrogation that a lady and a man came to him while he was locked up and the lady told him that she knew that he didn't commit the carjacking and robbery (See Exhibit 1, Daniel White's Interrogation Video) (See Exhibit 2, Daniel White's Affidavit and Officer Oliver's Photo). What is so ironic about claiming that it was a lady that told them these things is that there are only two women that worked in Commercial Auto Theft at that time (See Exhibit 4, Officer Oliver's Deposition, Page 56, Lines 12-14). This fact alone proves that Plaintiff and Donna Jones didn't make this information up.

Without conducting any investigation, Officer Oliver submitted the Request for Warrant to the magistrate within approximately 18 hours and 35 minutes, on a

15

weekend, when meaningful review was unlikely (See Exhibit 8, Officer Oliver's Written Discovery Responses). She also failed to include that Plaintiff did not appear on Green Light footage and omitted any meaningful suspect description from the Request for Warrant (See Exhibit 7, Video footage from January 29, 2023).

Officer Oliver stated during her deposition that she never told Plaintiff or his sister anything regarding Plaintiff not being involved in the carjacking or robbery (See Exhibit 4, Officer Oliver's Deposition, Page 35, Lines 13-25; Page 36, Lines 1-7). It would seem quite bizarre that Officer Oliver would view the interrogation of Plaintiff, and not direct Officer Gray or Officer Glover who she texts messaged throughout the interrogation to dispute the statements Plaintiff made towards her. One must conclude that Plaintiff and his sister made these statements early in the investigation, and that Officer Oliver's complete failure to dispute or investigate these statements further effectively amounts to an admission.

Plaintiff positively identified Officer Oliver as the officer that made the statements to him (See Exhibit 2, Daniel White's Affidavit).

Finally, when all omitted evidence is inserted into the Request for Warrant as required by *Franks* and *Sykes*, probable cause does not exist.

Also, Probable cause fails where Officer Oliver failed to conduct a reasonable investigation, which directly implicates the second prong of *Sykes v. Anderson*. Under *Sykes*, liability attaches where an officer influences or participates in the

16

decision to prosecute and there is a lack of probable cause for that prosecution. *Sykes* at 308-09. In *Kuehl v. Burtis*, the Eighth Circuit held that an officer violates the Fourth Amendment where he "made up [his] mind" about a suspect's guilt, failed to interview key witnesses, and ignored exculpatory facts, emphasizing that probable cause does not exist when a minimal further investigation would have exonerated the suspect. *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999). Although not binding on this court, *Kuehl* is very persuasive.

The record reflects that Officer Oliver believed Plaintiff's mere possession of the vehicle established a simple case for the carjacking and armed robbery; therefore, she conducted no further investigation, but only obtained his criminal record (See Exhibit 4, Officer Oliver's Deposition, Page 25, Lines 13-17). That assumption is legally incorrect. Possession of a vehicle may support, at most, Receiving and Concealing Stolen Property, but that does not establish probable cause for distinct offenses requiring separate elements.

This precise error was rejected in *Chiaverini v. City of Napoleon*, the United States Supreme Court held that probable cause must be evaluated on a **charge-by-charge basis** and that probable cause for one offense does not justify more serious charges. *Chiaverini v. City of Napoleon*, 602 U.S. 556, 563–64 (2024). In Chiaverini, the United States Supreme Court's ruling overturned a Sixth Circuit Court decision *Chiaverini* at 561-62.

17

Officer Oliver ignored readily available exculpatory evidence and failed to take even minimal investigative steps. Officer Oliver relied on the fact that Plaintiff was driving the vehicle that had been carjacked.  She turned a blind eye to the evidence. *Chiaverini* clearly states that, probable cause must be evaluated on a charge-by-charge  basis *Chiaverini* at 563–64. Officer  Oliver  admitted  that  she established probable cause once the victim picked Daniel White from the line-up (See Exhibit 4, Officer Oliver's Deposition, Page 26, Lines 3-18), despite the fact that Officer Oliver provided the victim with the Lineup Instructions which stated that, "the investigation will continue whether or not you select someone…" (ECF No. 26-24, Page ID. 358).  Officer Oliver was asked what type of investigation she conducted, and she could only state that she looked up his criminal record (See Exhibit 4, Officer Oliver's Deposition, Page 25, Lines 13-19).

Courts have made clear that probable cause does not exist where officers make up their minds and fail to investigate in the face of exculpatory facts. *Kuehl at* 650 (8th Cir. 1999). In *Kuehl*, the court held that an officer violates the Fourth Amendment where he fails to conduct a minimal investigation that would have exonerated the suspect. *Kuehl* at 650. That is exactly what occurred here.

Plaintiff provided officers with a clear and verifiable explanation. He stated that he purchased the vehicle for $2,000 and directed officers to documentation in the glovebox (See Exhibit 1, Daniel White's Interrogation Video). Officers

18

photographed that paperwork, but failed to meaningfully investigate or preserve it. Plaintiff also had multiple other vehicles, further undermining any inference that he committed a carjacking (See Exhibit 1, Daniel White's Interrogation Video).

More importantly, Defendant ignored compelling evidence pointing to the actual suspect. There existed a photograph of the real suspect matching the victim's original description, yet Plaintiff was still included in a lineup that deviated from that description. Additionally, Officer Oliver's own attorney later located a photograph showing Plaintiff at a concert on the same day as the carjacking standing with his sister Donna Jones and a friend (See ECF No. 26-30, PageID. 473 Lines 11-25 and ECF No. 26-30, PageID. 474 Lines 1-17). More importantly, Officer Oliver's attorney provided a Facebook photo and Plaintiff and the male suspect standing together at a club.  The individuals had on the exact some outfit as the suspect in the robbery and carjacking (ECF No. 26-32, Page ID. 591). Plaintiff has never denied that someone from his neighbor named Gooch sold him the vehicle (See Exhibit 1, Daniel White's Interrogation Video). This evidence demonstrates that a minimal investigation by Officer Oliver would have revealed Plaintiff's innocence.

Officer Oliver also relied on a victim who was not reliable. The Sixth Circuit permits reliance on a victim's identification only where there is no reason to doubt its accuracy. *Ahlers* at 370. Here, the victim admitted he was drinking, lied at least

19

once about a sexual encounter, and then changed his story. These facts required further investigation and made blind reliance unreasonable.

That is consistent with the evidence, which at most supported a lesser property offense, not carjacking or armed robbery.

Under *Kuehl*, *Gardenhire*, and *Ahlers*, officers cannot ignore exculpatory evidence, rely on unreliable witnesses, or fail to conduct basic investigative steps. Under *Chiaverini*, they cannot bootstrap a minimal basis for one offense into more serious charges. When these principles are applied, Defendants' failure to investigate establishes that there was no probable cause to prosecute Plaintiff for carjacking or armed robbery.

**C.**    **As a Consequence of the Legal Proceeding, Plaintiff Suffered a Deprivation of Liberty Apart from the Initial Seizure**

As a result of the prosecution initiated by Defendant Officer Oliver, Mr. White suffered a deprivation of liberty apart from his initial seizure. The Sixth Circuit has made clear that while mere reputational harm or the costs of defending a case are insufficient, post-process restraints such as detention, bond obligations, and required court appearances constitute a cognizable deprivation of liberty under the Fourth Amendment. *Sykes* at 308–09; *Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015); *Johnson v. City of Cincinnati*, 310 F.3d 484, 493 (6th Cir. 2002). Here, Mr. White was subjected to precisely those restraints as a direct consequence of a prosecution unsupported by probable cause, satisfying the deprivation of liberty

20

requirement. Plaintiff was incarcerated for two weeks, and was given a $50,000 cash bond with a tether, and told not to leave the state (ECF No. 26-29, PageID. 463-466).

**D.      The Criminal Proceeding Was Resolved in Plaintiff Daniel White's Favor**

To satisfy the final element of a malicious prosecution claim, Plaintiff Daniel White must show that the criminal proceeding was resolved in his favor. *Sykes at* 308–09. A plaintiff is not required to demonstrate an affirmative indication of innocence. Rather, it is sufficient to show that the prosecution ended without a conviction. *Thompson v. Clark*, 596 U.S. 36, 142 S. Ct. 1332, 1341 (2022). Additionally, under Michigan law, the dismissal of criminal charges at the request of the prosecution constitutes a favorable termination. *Cox v. Williams*, 233 Mich. App. 388, 393; 593 N.W.2d 173 (1999).

Here, the charges against Plaintiff Daniel White were dismissed on March 13, 2023, and he was not convicted of any offense (ECF No. 26-29, PageID. 463-466).

Accordingly, the criminal proceeding terminated in his favor, satisfying this element of his malicious prosecution claim.

It is clearly established that initiating or continuing a criminal prosecution without probable cause constitutes a constitutional violation of the Fourth Amendment. *Sykes* at 308–09. It is further clearly established that officers violate the Constitution when they ignore exculpatory evidence or proceed with charges

21

unsupported by probable cause. *Gardenhire* at 318. Accordingly, Defendants' conduct amounts to a clearly established constitutional violation.

**3.    SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF OFC. OLIVER AS TO COUNT IV (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)?**

To establish a prima facie claim of intentional infliction of emotional distress, Plaintiff must show (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *Walsh v. Taylor*, 263 Mich App 618, 634; 689 NW2d 506 (2004). Conduct rises to this level only where it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *Walsh* at 634 (quoting *Graham v. Ford*, 237 Mich App 670, 674; 604 NW2d 713 (1999)).

The test to determine whether a person's conduct was extreme and outrageous is whether recitation of the facts to an average member of the community would arouse resentment against the actor and lead that individual to exclaim, "Outrageous!" *Graham* at 674–675 (quoting *Roberts v. Auto-Owners Ins. Co.*, 422 Mich 594, 603; 374 NW2d 905 (1985), quoting Restatement Torts, 2d, § 46, comment d, pp. 72–73). In reviewing such claims, it is generally the trial court's duty to determine whether the conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *Doe v. Mills*, 212 Mich App 73, 91; 536 NW2d

824 (1995). Where reasonable minds may differ, the question is for the jury. *Linebaugh v. Sheraton Michigan Corp.*, 198 Mich App 335, 342–343; 497 NW2d 585 (1993).

In this case, a reasonable jury could conclude that Officer Oliver's conduct satisfies that standard. The record does not reflect a close call or a good faith mistake. It reflects that Officer Oliver proceeded against Daniel White despite the existence of clear, objective, and verifiable evidence demonstrating that he was not responsible for the alleged offense.

Daniel White was arrested while in possession of the vehicle with his child present and documentation inside the glovebox confirming his purchase. He immediately explained how he obtained the vehicle, identified the individual from whom he purchased it, and provided details that were capable of verification. His account was consistent and aligned with the physical evidence available to law enforcement.

At the same time, there was no evidence placing Daniel White at the scene of the carjacking or otherwise connecting him to the commission of that offense. Despite this, Officer Oliver caused Daniel White to be placed into a photographic lineup. A reasonable juror could conclude that placing an individual into a lineup under circumstances where the officer has reason to know he is not the perpetrator

23

creates a substantial risk of misidentification and reflects a reckless disregard for the truth.

Officer Oliver did not meaningfully investigate the exculpatory information that was readily available. The documentation in the glovebox was not pursued. Daniel White's explanation of lawful possession was not verified. The absence of evidence connecting him to the underlying offense was not treated as a basis to halt the process. Instead, the investigation proceeded in a manner that disregarded those facts and allowed charges to move forward.

When the facts of this case are considered in their entirety, a reasonable juror could conclude that they would cause an average member of the community to react with outrage. Proceeding against an individual under these circumstances, while ignoring readily available evidence of innocence and subjecting that individual to identification procedures that could produce false inculpatory evidence, is the type of conduct contemplated by *Graham*.

The evidence also supports a finding of at least recklessness. Officer Oliver had reason to question the basis for proceeding against Daniel White and nevertheless continued actions that resulted in his arrest and prosecution. That is sufficient to satisfy the intent or recklessness element under Michigan law.

Causation is satisfied because Officer Oliver's conduct directly led to Daniel White's arrest and the continuation of criminal proceedings against him. Absent

24

those actions, he would not have been subjected to the resulting deprivation of liberty.

Finally, the nature of the harm supports a finding of severe emotional distress. Being arrested for a serious offense, accused of conduct he did not commit, and subjected to the criminal process under these circumstances constitutes the type of distress recognized under Michigan law.

At a minimum, reasonable minds could differ as to whether Officer Oliver's conduct was so extreme and outrageous as to impose liability. Accordingly, this issue must be submitted to the jury, and summary judgment is not appropriate.

Dated: April 8, 2026

/s/Ivan L. Land
Ivan L. Land (P65879)
Law Offices of Ivan L. Land, P.C.
25900 Greenfield Rd., Suite 210
Oak Park, MI  48237-1267
248.968.4545 / (f) 248.968.4540
ill4law@aol.com
**Attorney for PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing brief with the Court Clerk via CM/ECF on April 8, 2026 to serve all parties.

Dated: April 8, 2026

Respectfully Submitted,

25

/s/Ivan L. Land
Ivan L. Land (P65879)

26