**LaShauntia Oliver**
**02/02/2026**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL WHITE,
an individual,

      Plaintiff,           Case No. 2:25-cv-10306
                            Hon. Mark A. Goldsmith

vs.

CITY OF DETROIT, a municipal corporation,

LaSHAUNTIA OLIVER,
City of Detroit Police Officer,
Individually, and in her Official Capacities,

      Defendants.

_____/

PAGE 1 TO 69

The deposition of LASHAUNTIA OLIVER,

Taken Via Hanson Remote,

Commencing at 2:04 p.m.,

Monday, February 2, 2026,

      Before Donna R. Rapp CSR 6253.

   Court reporter, attorneys & witness appearing remotely.

APPEARANCES:

IVAN L. LAND (P65879)
LAW OFFICES OF IVAN L. LAND PC
Attorney for Plaintiff
25900 Greenfield Road, Suite 210
Oak Park, Michigan 48237
(248) 968-4545, Fax: (248) 968-4540
Ill4law@aol.com


GREGORY B. PADDISON (P75963)
CITY OF DETROIT LAW DEPARTMENT
Attorney for Defendants
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
(313) 237-0435, Fax: (313) 224-5505
Paddisong@detroitmi.gov


                              ***   ***

**LaShauntia Oliver**
**02/02/2026**                                    **Page 3**

TABLE OF CONTENTS

WITNESS                                                PAGE

LASHAUNTIA OLIVER
     Examination by Mr. Land                              5
     Examination by Mr. Paddison                         36
     Re-examination by Mr. Land                          57
     Re-examination by Mr. Paddison                      64

TABLE OF EXHIBITS

EXHIBIT                      DESCRIPTION                 PAGE

Exhibit 9                    Photograph                   22
Exhibit 10                   Photograph                   23
Exhibit 11                   Lineup Instructions          23
Exhibit 12                   Register of Actions          31
Exhibit 13                   Request of Search            33
                             Warrant
Exhibit 14                   Photograph                   35
Exhibit 15                   Photograph                   35
Exhibit 16          Case Supplemental Report      46
(Exhibit 16 was retained with counsel.)

Remote deposition

Monday, February 2, 2026

About 2:04 p.m.

COURT REPORTER:  Good afternoon, everyone.  My name is Donna Rapp, a Michigan State notary public and certified shorthand reporter, and this deposition is being held via videoconferencing equipment.  The witness and reporter are not in the same room.  The witness will be sworn in remotely pursuant to agreement of counsel.  All counsel do stipulate that the testimony is being given as if the witness were sworn in person; is that correct?

MR. LAND:  That's correct.

MR. PADDISON:  Correct.

COURT REPORTER:  Ms. Oliver, can you please raise your right hand.

Do you promise that the testimony you give in this matter will be the truth, the whole truth, and nothing but the truth?

MS. OLIVER:  Yes.

LASHAUNTIA OLIVER

having been first duly sworn, was examined and testified under oath as follows:

MR. LAND:  Good afternoon, Ms. Oliver.

**THE WITNESS:  Good afternoon.**

MR. LAND:  Okay.  I'm Attorney Ivan Land,

representing Daniel White in the matter of Daniel White vs. City of Detroit and LaShandria (Phonetic)[sic] Oliver. This case is a United States District Court case, Eastern District of Michigan, Southern Division; Case Number 25-cv-10306.

I know you had your deposition taken before.  So I just want to remind you that this is a question and answer session and that the court reporter cannot report "uh-uhs" and "uh-uh," so it's "yes" or "no" answers.

Also, I would like to state that if you don't understand something that I've asked, please have me repeat it.  Don't try to guess.  Understood?

**THE WITNESS:  Yes.**

MR. LAND:  Thank you for being here today.

EXAMINATION

BY MR. LAND:

Q.  Let me start out by -- you're no longer a Detroit police officer?

**A.  No.**

Q.  When did you stop being a Detroit police officer?

**A.  September 2024.**

Q.  September 2024.  Were you fired or were you -- did you retire?

MR. PADDISON:  Go ahead and ask your -- Were you finished?

MR. LAND:  Yeah.

MR. PADDISON:  Yeah, I'll just place an objection as to relevance.

You can answer it.

BY MR. LAND:

Q.  Were you actually terminated?

**A.  No.**

Q.  Did you resign?

**A.  Yes.**

Q.  For the matter with Porcha Woodruff and Daniel White, did you receive any discipline?

MR. PADDISON:  Same objection as to relevance.

You can answer.

**A.  Not that I'm aware of, no.  At the time, no.**

BY MR. LAND:

Q.  Okay.  Are you a police officer now?

**A.  No.**

Q.  Okay.  Okay, so I want to start with the -- I want to take you back to January 29, 2023, why we're here today, in regards to a Laurence Walker.  Do you remember that incident in this case?

**A.  Yes.**

Q.  Yes.  Do you remember that Mr. Walker was allegedly robbed and carjacked?

**A.  Yes.**

Q. Do you remember that Mr. Walker told the initial officers at the scene that the individual was between 23 and 25 years of age?

MR. PADDISON: Place an objection as to speculation.

You can answer to the extent that you know.

A. I was -- I mean, it was three years ago, so I don't recall verbatim. But whatever's in the report is, I guess, what I remember.

BY MR. LAND:

Q. And you did review the report before you prepared the warrant for request -- request for a warrant? I'm sorry.

A. Yes.

Q. Okay. And at some point you spoke with Mr. Laurence Walker; am I correct?

A. Yes.

Q. And that was after you were assigned this matter?

A. Yes.

Q. Okay. And Mr. Walker had informed you that he had received his cell phone back?

A. Yes.

Q. And do you remember -- I ask you, did that cause you any concern that he had received his cell phone back and that he did not contact the Detroit Police?

A. No, not any concern. I just asked why, I believe.

LaShauntia Oliver
02/02/2026                                    Page 8

Q. You asked why?

A. I probably asked why, I'm sure.

Q. You asked why. Why -- what did you mean? You asked why what?

A. I called him on his mother's cell phone. He informed me he had his cell phone back; and I'm pretty sure I asked him, you know, did you try to get in touch with someone. I'm not sure if I did or not.

Q. And after you spoke with him you went and reviewed footage from the gas station?

A. Yes.

Q. Okay. And that was before the arrest warrant was issued?

A. Yes.

Q. Okay. And as a matter of fact, before the arrest warrant was issued you reviewed footage on two days, January 30, 2023 and January 31, 2023?

        MR. PADDISON: Objection. Objection. Assumes facts not in evidence.

        You can answer to the extent you know.

        THE WITNESS: What were the dates again?

BY MR. LAND:

Q. January 30, 2023 and January 31, 2023, you reviewed footage from those days?

        MR. PADDISON: Objection. Assumes facts not in evidence. Mischaracterizes the report.

You can answer to the extent that you know.

BY MR. LAND:

Q. Well, can --

**A. I don't believe I viewed footage on the 30th. I was assigned the scene, I believe, later in the day; which I didn't get to the case until the 31st --**

Q. Well --

**A. -- when I returned back to work.**

Q. Well, I want to draw your attention to -- it would be Exhibit -- we've marked it Exhibit 1.

MR. LAND: But for the court reporter, it will be Attachment 9.

COURT REPORTER: Exhibit 9?

MR. LAND: Attachment 9, our Exhibit 1.

MR. PADDISON: Attachment 9?

MR. LAND: You don't have it. I didn't send it. I didn't send it to you like that.

MR. PADDISON: So how is she -- okay.

MR. LAND: Yeah, so it's our Exhibit 1 though.

MR. PADDISON: Okay.

MR. LAND: I knew I was going to go out of line, so I just put it to her as attachment. That is correct, sir (Indicating). That is the right one (Indicating).

(Scrolling)

MR. LAND: No, you were at the right one, it's

just Attachment 9.

MR. PADDISON:  It is an attachment.  I'm waiting for --

MR. LAND:  Okay.

MR. PADDISON:  This one here (Indicating) --

MR. LAND:  No. It's actually --

MR. PADDISON:  -- or... (Indicating)?

MR. LAND:  That right there (Indicating).  Yes. And can you scroll to page two.  No, that's not it.  I'm sorry.  Attachment -- it's Attachment 9.

MR. PADDISON:  What's the document called?  Is it Request for --

MR. LAND:  It's Detroit Police Request for Warrant.

MR. PADDISON:  Yeah, that was, I believe, nine on his -- you've got it on nine, the original investigator's report?

MR. LAND:  Yeah.

MR. PADDISON:  Yeah, that's nine.  He's got it right there.

MR. LAND:  My person that sent it?

MR. PADDISON:  Yeah, yeah.

MR. LAND:  Can you go to the second page?  Okay. **A little bit further up.  Right under the word "Investigation."  Okay, right there (Indicating).  Thank**

you so much.

BY MR. LAND:

Q.  Okay.  Ms. Oliver, I want to take you and draw your attention to under "Investigation" where it states that you were assigned the case on January 30th.  Am I correct?

A.  Yes.

Q.  And then you contacted Mr. Walker on the 31st; am I correct?

A.  Yes.

Q.  And then you stated, "I had his cell phone in possession."  And stated, "The phone was dropped off at the Van Dyke by a female."

A.  Yes.  Okay.

Q.  And you stated, "I, Officer Oliver, made the location and observed on video surveillance a black female."  Am I correct?

A.  Yes.

Q.  Okay.  So you did issue the videotape on --

MR. PADDISON:  January 31st, correct?  I believe you previously asked if it was January 30th.

MR. LAND:  That's cool.  That's --

BY MR. LAND:

Q.  Okay, January 30th -- 31st, am I correct?

A.  Yes.

Q. Okay.  And you observed a female turn the phone in?

A. Yes.

Q. Okay.  When you went to Laurence Walker you didn't take the phone for evidence?

A. When I went where?

Q. When you were interviewing Laurence Walker?

A. No.

Q. You did not take the phone for evidence?

A. No.

Q. Why not?

A. I just did not.  I just didn't.

Q. Okay, that's fair.  When you were interviewing Laurence Walker, he told you that the gentleman that robbed him was at the gas station earlier that day?

MR. PADDISON:  Objection.  Assumes facts not in evidence.  And also could you clarify which discussion with Mr. Walker you're referring to?

BY MR. LAND:

Q. When you -- you had a discussion with Mr. Walker, and you had made a written statement on February 3, 2023.  Do you remember having the discussion with Mr. Walker?

A. On -- do we have --

Q. And --

A. Yes, I remember having a discussion with him.  Are you referring to when he came to my office and I interviewed

him?

Q. Yes.

MR. LAND:  Mr. Hanson, can you go to attachment two, please?

(Whereupon, document was displayed)

MR. LAND:  And, yes, that's what I'm referring to (Indicating).

**THE WITNESS:  Okay.**

MR. LAND:  And it's Attachment 2.  We're going to mark this -- what is this?

MR. PADDISON:  This was already marked.

MR. LAND:  It was?

COURT REPORTER:  Can we go off the record?

(At 2:16 p.m., off the record)

(At 2:17 p.m., on the record)

MR. PADDISON:  Let the record reflect that prior to this deposition, the deposition of the Commander Anthony O'Rourke was taken.  Counsel for the parties discussed it and decided we would continue numbering the exhibits.  So when we reference exhibit, we're referring to a continuation from the prior exhibit.  When brother counsel refers to attachment, he's referring to a numbered -- a series of attachments that were previously sent to the court reporter.  They are not necessarily synched up.  What we're looking at and seeking right now happens to be marked

as Attachment 2 as well as exhibit --

MR. LAND:  Let me -- let me just -- let's make this easy.  Let's just start over.

MR. PADDISON:  Okay.  Okay, that's fine.  That's fine.

MR. LAND:  Yeah.  We're going to start over.

THE VIDEOGRAPHER:  If it helps, when you call for a document, the only thing I have to go off of is what you guy's named the document.

MR. LAND:  Yes.  The document previously marked as Exhibit 6, and it is the attachment to -- that's what's going to confuse everybody, me saying attachment to.

MR. PADDISON:  Well, we can clarify as we go. The correct document is on the screen.  This is --

MR. LAND:  I know what we can do.  Is he --

Can you see us?

MR. LAND:  Can he see us?

VIDEOGRAPHER:  I can -- if I need to.  I'm not looking at you at the moment.

MR. LAND:  What I'm going to do is hold up a sign of what attachment it is.

VIDEOGRAPHER:  Yeah, you guys labeled the document -- like this one we're looking at, it's Number 2, Victim's Statement.  And there's Number 3, gas station photo.  Number four.  So, it's helpful for me if you call

them out as what they're labeled.

MR. PADDISON:  Okay.  Then let's just start over and you --

VIDEOGRAPHER:  If they're in the order that they came in.

MR. PADDISON:  That's fine.  Then we'll start over.

VIDEOGRAPHER:  When you say Attachment 2, I assume that what is two on my screen is the two that you're referring to.

MR. LAND:  Yes.

VIDEOGRAPHER:  And so on.

MR. LAND:  Yes.

VIDEOGRAPHER:  So when yu say two right now, I have -- it's the two that I have on the screen, correct?

MR. LAND:  That is correct, sir.

VIDEOGRAPHER:  Then I think we should be able to proceed.  I think we're all on the same page.

MR. LAND:  That's fine.  Okay.  Can you scroll it up a little.

VIDEOGRAPHER:  We're at the very top of the page. There's nowhere to go.

MR. LAND:  I mean scroll down.  Sorry.

BY MR. LAND:

Q.  Okay.  I'm showing you -- Ms. Oliver, I'm showing you an

exhibit that has been previously marked as Exhibit 6. And what I was asking you is that the victim told you the light-skinned dude that robbed him was at the gas station prior talking to a young lady by the name of Trinidad [sic]?

MR. PADDISON:  Objection as to form.  Assumes facts not in evidence.

You can answer.

A.   **You're asking me if the victim said that the light-skinned male was -- can you repeat the question? I'm sorry.**

BY MR. LAND:

Q.   Yes.  So, what it states that the -- what you wrote down, he said, "I saw her hug this passenger, light-skinned dude.  It was a dark skinned dude in her driver's seat -- in the driver's seat.  The girl went inside the BP and brought me a Breeze pen.  From there we went to Gratiot and Bessemore.  I think I saw the same Tahoe.  The light-skinned got out of it, let the girl in.  She got out of my car, and into..." --

A.   **Okay.  What's the question?  I'm not --**

Q.   I'm asking you, isn't it true that the victim stated that the light-skinned dude that was at the gas station is the one that eventually robbed him?

MR. PADDISON:  Objection as to form.  Assumes

facts not in evidence.

You can answer.

A.  He said that -- I mean, what you're reading is exactly what he said.  He said that the light-skinned dude was inside the Tahoe; and there was a Tahoe at the location on Gratiot and Bessemore.

BY MR. LAND:

Q.  Yes.  And he identified the guy as being 25 -- 23 to 25, with braids, weighed about 160 -- excuse me -- 130 pounds?

MR. PADDISON:  Objection.  Form.  Foundation. Assumes facts not in evidence.

You can answer.

A.  He never -- the victim did not tell me that.  The victim -- if that's what's written down that is on --

BY MR. LAND:

Q.  Through the course -- you were the officer in charge of this investigation; am I correct?

A.  Yes.

Q.  And as the officer in charge, you're responsible for reviewing this matter; am I correct?

A.  Correct.

Q.  And you did review this matter; am I correct?

A.  Yes.

Q.  And at some point you learn that the victim stated that

LaShauntia Oliver
02/02/2026                                    Page 18

the suspect -- male suspect who robbed him weighed 130 pounds and was between the ages of 23 and 25?  Am I correct?

A.  I believe so, yes.

Q.  And you -- he stated that he had braids; am I correct?

A.  I believe he said he may have had braids.  I don't have the -- I don't have -- I can look on my phone, but I don't have the actual -- the first report.  I have my investigator's report on him.

Q.  You were not forwarded these reports?

A.  Yes.  I ran out of ink just a few hours ago.

MR. LAND:  Let the record --

A.  I only have certain pages.

MR. LAND:  Let the record reflect that Ms. Oliver stated she ran out of ink.

BY MR. LAND:

Q.  Okay.  And so you do remember the victim stating that the suspect was, again, 130 pounds, 23 to 25?

MR. PADDISON:  Objection.  Mischaracterizes prior testimony.  Assumes facts not in evidence.  Form and foundation.

You can answer to the extent that you know.

A.  I believe so.

MR. LAND:  Okay.  Now, I want to go to what has been previously marked as Plaintiff's Exhibit 3.  And it is

attachment three.

(Whereupon, document was displayed)

BY MR. LAND:

Q. And that's the young man that's walking by the gas station with a bag (Indicating). Do you see that?

A. Yes.

Q. Do you remember seeing this photo?

A. Yes.

Q. Do you remember that the victim told you that the suspect had a black jacket? Was wearing a black jacket?

A. Is that what I put in my report? I can --

Q. Well, do you remember reading any report stating that the victim stated that the suspect had a black jacket? Do you remember reading that?

A. If I -- I'm trying to recall, but I believe so, a black jacket.

Q. Thank you.

A. Or a dark-colored shirt.

Q. Thank you, Ms. Officer -- Oliver. And this photo was submitted to the Wayne County Prosecutor as the male suspect? And I believe you mentioned that you stated that in your Request for Admissions.

A. Yes.

Q. Okay. Officer Oliver, did you remember that your two colleagues, Grey and another officer, interviewed Daniel

White?

A. Yes.

Q. Do you remember Daniel White was adamant about that it was not him?  That he was not the person?

A. **No, I don't remember him, Daniel White, being adamant that it wasn't him.  I don't remember him being adamant about that.**

Q. Do you remember viewing -- you were at the DDC, and you testified before that you were in a remote location but you watched the interview?

A. **Yes.**

Q. Do you remember during the interview sending text messages to one of the officers?

A. **I believe so.**

Q. Yes.  Okay.  Do you remember Daniel White stating that he purchased the vehicle for $2,000?

A. **I believe so.  That sounds familiar.**

Q. And do you remember Daniel White stating that the paperwork was in the glove box?

A. **I believe.  I'm not sure.**

Q. You believe so or you're not sure?

A. **No.  I believe -- maybe.  I don't know.**

Q. Well the --

A. **They always say that.**

Q. If the video reflects that -- it states that, you

wouldn't think that he was not telling the truth?

MR. PADDISON: Objection as to form.

You can answer if you understand the question.

A. **Are you asking me if I believe if Daniel White was telling the truth?**

BY MR. LAND:

Q. Well, I'm asking you if the video -- if we were shown -- if you were shown a video and it states that Daniel White stated the paperwork was in the glove box, would you have any reason to doubt that video?

A. **No.**

Q. Okay. Thank you, officer. So, officer, when he stated to you that the paperwork was in the glove box, did you as the officer in charge go out and obtain the contents of that glove box?

A. **Officer -- sorry, not officer -- Daniel White did not tell me specifically that the paperwork was inside the vehicle.**

Q. But --

A. **And if he did mention it to the officers that were in -- talking to him or speaking to him, no, I did not go to the car.**

Q. But you were watching the interview when they -- at the same time they were interviewing him?

A. **Yes. But also I'm pretty sure I was -- I had it up on my**

screen, and I was probably reading something as well.

But, yes, I know the video was on the screen, and I was

watching it.

Q.  Okay.

MR. LAND:  Can I have this marked as Exhibit 9.

(Exhibit 9 marked for identification, Photograph)

MR. LAND:  Mr. Hanson, this is Attachment 4.

BY MR. LAND:

Q.  Ms. Oliver, I want to show you what's been marked as

Exhibit 9.  These are the -- this is the glove box that a

photo was taken of the glove box, and there's

documentation inside of that glove box.  Do you see it?

A.  I see papers, yes.

Q.  Yes.  Okay.  Did you get these documents and take photos

of them?

A.  No.

Q.  Why not?

A.  I just did not.

Q.  Okay.

A.  Do anyone know what the photos were or those papers?

Q.  That's what I'm concerned about.  Because you didn't have

photos.  And I've been requesting those photos of what

that was, but I have not received them.

MR. PADDISON:  It's in the evidence tech log.

MR. LAND:  Can I have this marked as Exhibit 10.

LaShauntia Oliver
02/02/2026                                    Page 23

(Exhibit 10 marked for identification,

Photograph)

MR. LAND:  And that is Attachment 5.

(At 2:32 p.m., off the record)

(At 2:34 p.m., on the record)

BY MR. LAND:

Q.  Ms. Oliver, thank you for your patience.

A.  Yes.

Q.  Do you see that the glove box is now empty (Indicating)?

A.  Yes.

Q.  Okay, thank you.  I'm going to now move on to the lineup instruction.  We're going the mark this as Exhibit 11?

(Exhibit 11 marked for identification, Lineup Instructions)

BY MR. LAND:

Q.  And, Ms. Oliver, can you read into the record?

A.  Lineup?  Read the lineup instructions?

Q.  Make it -- for simplicity, the -- just read paragraph three, Ms. Oliver.  Thank you.

A.  "You should not feel compelled to make an identification. The investigation will continue whether or not you select someone.  If you make the selection of an individual who is ultimately not involved in the crime the individual will not incur any charges or police action just because you selected them."

**LaShauntia Oliver**
**02/02/2026**                                           **Page 24**

Q. Okay. Now, Ms. Oliver, am I correct that he selected Daniel White?

**A. Yes.**

Q. And Daniel White was 41 years of age at the time.

**A. Okay.**

Q. Am I correct?

**A. I believe 41 or 42.**

Q. Okay. And -- thank you. I appreciate that, Ms. Oliver. And he weighed 190 pounds.

**A. Okay.**

Q. Am I correct?

          MR. PADDISON: If you know.

BY MR. LAND:

Q. If you know.

**A. I don't know. But if it's on the intake then that's his weight.**

Q. And he was -- had a bald head?

**A. Okay. Yes.**

Q. And the victim stated he saw the individual at the gas station, correct?

          MR. PADDISON: Okay. Assumes facts not in evidence.

BY MR. LAND:

Q. You can answer.

**A. The victim state -- or, I don't -- what's the question**

again?

Q. The victim stated he believed he saw this same young man at the gas station?

A. Yes.

Q. And you provided a photo to the Wayne County Prosecutor's Office?

A. The photo lineup?

Q. The -- no, the photo of -- which we just showed you as Exhibit 3.

A. Okay.

Q. Exhibit 3 with the young man carrying the bag.

A. Okay.

Q. Now, so you just stated no matter who he picks the investigation will continue. Can you very slowly tell me what you did to continue the investigation?

A. I looked up -- or I investigated Daniel White, his criminal record or history.

Q. Okay. That's it?

A. At the time, yes.

Q. Okay.

A. He was positively identified in the photo lineup.

Q. Positively identified in the photo line up. And because he was positively identified in the photo lineup, is that why you didn't continue the investigation?

MR. PADDISON: Objection. Mischaracterizes

testimony.

BY MR. LAND:

Q.  Well, is -- because he identified him in the photo lineup, is that the only reason why you only obtained the arrest record or criminal record?

A.  **There was probable cause from the victim positively IDing Daniel White, and Daniel White was in possession of the carjacked vehicle.**

Q.  It's probable cause that he was in possession of the carjacked vehicle?

A.  **What's your question again?  I'm sorry.**

Q.  Can you just repeat what you just stated why you failed to do any further investigating?

MR. PADDISON:  Objection.  Mischaracterizes testimony.  Argumentative.

You can answer.

A.  **There was enough probable cause once he made a positive identification.**

BY MR. LAND:

Q.  Okay.  And so you did not later question the victim about the disparity in the description of the person that the victim described and the person that was ultimately arrested for this carjacking?

MR. PADDISON:  Objection.  Form.  Foundation. Assumes facts not in evidence.

You can answer.

A.   Did you look at the victim's statement from when Officer
     -- or not Glover -- but Fletcher interviewed the victim?

BY MR. LAND:

Q.   What are you asking me?  I'm sorry.

A.   Did you review the victim's statement from when Officer
     or Detective Fletcher interviewed the victim?

Q.   I did.

A.   Because he did -- someone can easily cut their hair.  And
     if, you know, the weight is an issue, it was wintertime.
     Some people look heavier than what they appear,
     especially if it's nighttime and they have a gun to their
     head or stomach or chest.

Q.   Well, is that something that you should have documented
     in the arrest warrant -- warrant for arrest?

          MR. PADDISON:  Objection.  Form.  Foundation.
     Assumes facts not in evidence.

          You can answer.

A.   I included whatever the victim stated.  Both -- or he
     described the victim to the officers who first were
     called.  He described the victim again to me.  He
     described -- well, no, he described the victim again to
     Officer Fletcher.  A light-skinned black male.

BY MR. LAND:

Q.   Did he give the height, weight, braids?

A. I believe so.  And he is -- Daniel White was or is 5'10" in height.

Q. Okay.  Did you document that in the warrant for -- request for arrest warrant?

MR. PADDISON:  Just to be clear, are you referring to the -- just the investigator's report or the entire packet?

MR. LAND:  I'm referring to the request for a warrant.

BY MR. LAND:

Q. In the request for a warrant that was being submitted to the prosecutor, did you include the victim's descriptions?

A. There -- the request for -- do we have a photo of -- just the request?  Is it just one sheet or two?

Q. No, it's four.  Would you like for us to pull it back up?

A. Yes.

Q. Okay.  That is Exhibit 2.

MR. LAND:  That's not -- Exhibit 2 is the Detroit Police request for a warrant.  It's Exhibit 1 and Exhibit 2, but it doesn't matter which one we use, but... Exhibit 1 or 2.  And that would be my Attachment 9.

(Whereupon, document was displayed)

BY MR. LAND:

Q. Okay.  Do you want us to just scroll through it slowly,

Ms. Oliver?

A.   Yes, that's fine.

        MR. LAND:  Just scroll through it slowly Mr. Hanson.  I'm sorry about that.  Just stop it on the first page of print and let her take a look at that.  Go ahead a little further to get the whole first page of print.  Right there (Indicating).  That's fine right there (Indicating).

        THE WITNESS:  Okay.

        MR. LAND:  Go to the next page, Mr. Hanson.  I'm sorry.

        (Whereupon, a new page was displayed)

        THE WITNESS:  Okay.

        MR. LAND:  Thank you so much, sir.

        THE WITNESS:  Okay.

        (Whereupon, videographer began scrolling through
         the document)

        THE WITNESS:  Okay.

        (Scrolling)

        MR. LAND:  I think that's about it.

BY MR. LAND:

Q.   So detect -- I mean, excuse me.  Ms. Oliver, did you include any physical description of the male subject in the request for a warrant?

A.   This is a summary of everything.  The investigator's report is pretty much a summary of everything.  But I did

include in the packet sent to the prosecutor's office the victim statement which explained -- or the victim told Officer Fletcher -- he gave him the description then.

Q. And --

A. So that was included.

Q. But not included in the request for a warrant?

MR. PADDISON: Just -- can we clarify? Because these four pages are investigative report (Indicating0. The request for a warrant contains everything. So I don't want there to be any ambiguity.

MR. LAND: I understand.

A. So, the request for a warrant, yes, that would have been the -- there's a description inside of the victim statement.

BY MR. LAND:

Q. There's a description inside of the victim's statement?

A. Yes.

Q. But -- and so --

A. When -- Detective Fletcher when he interviewed him.

Q. Okay. So you're on the record. You're under oath. Are you telling me that you scanned in documents and sent those documents in along with the four page request for a warrant?

A. Everything is together. There's a -- probably 30 pages, maybe. I don't know the exact number; but, yes,

investigator's report is also attached to -- or the victim's statement is attached.  Or it's separate attachments.

Q.  Okay.

MR. LAND:  And this has been previously marked as Exhibit 4, and it's my Attachment 8.  It is the photo lineup, Mr. Hanson of the eight individuals.

BY MR. LAND:

Q.  Now, Ms. Oliver, I want you to look at that, but I don't want you to look at that for the order or anything.  I just want you to look to make sure those are the individual males that were shown in the lineup?

A.  Can I refer -- I'm pretty sure but --

Q.  Of course.  Of course.  You can refer.  Yes.

A.  Okay.  I don't have the photo lineup, but they -- it looks familiar, yes.

Q.  Okay.  Okay.  Thank you.  Thank you, Ms. Oliver.  I know that it's been awhile, but thank you so much.  I appreciate that.  Ms. Oliver, I want to have this --

MR. LAND:  What number are we on?

COURT REPORTER:  Twelve.

MR. LAND:  Twelve.  And it's Attachment 11. Exhibit 12.

(Exhibit 12 marked for identification, Register of Actions)

BY MR. LAND:

Q. Okay, are you ready, Ms. Oliver?

A. Yes.

Q. On March 13th, this matter was dismissed because the victim failed to appear in court. Are you aware of that?

A. Yes.

Q. Okay. Did you do any follow-up with this victim as far as trying to obtain a material witness warrant or anything?

A. Yes.

Q. And what happened?

A. Wait, you said a material witness? Is that what --

Q. Well, first of all, did you do any follow-up with the victim as to why he didn't show up in court?

A. I tried to reach him or tried to make contact with the victim.

Q. Did you write that? Was that reflected in any report?

A. It may have been reflected in my case notes.

Q. Well, I can't live with may. It's either it was or it wasn't?

        MR. PADDISON: If she doesn't remember, she doesn't remember.

        THE WITNESS: I don't remember.

BY MR. LAND:

Q. Did you -- so did you do any investigating? Did you

request a material witness warrant?

A. No.

Q. Why not?

A. I just did not.  If the victim didn't show up, I reached out to him, and he never -- you know, we had court scheduled, and he didn't show any interest in prosecuting or being involved, and that was the end of it.

Q. And that's all -- and you left it alone?  You didn't decide to do any further investigating or anything?

MR. PADDISON:  Objection.  Mischaracterizes prior testimony.  Assumes facts not in evidence, and lacks foundation.

You can answer.

A. Did I contact the victim after?  Again, I said I don't know.  I may have.

Q. Okay.  I want to show you what's been marked as --

MR. LAND:  Going to be marked -- what number are we on?

COURT REPORTER:  Thirteen.

MR. LAND:  Thirteen.  And, Mr. Hanson, it's Attachment Number 14.

(Exhibit 13 marked for identification, Request of Search Warrant)

BY MR. LAND:

Q. Ms. Oliver, do you remember this document?

A.  Yes.

Q.  And that's Exhibit 13.  And you did a request for a search warrant, am I correct?

A.  Yes.

Q.  What was the results of the search warrant?

A.  There was not any results.  The phone -- I don't believe the phone was -- I don't know if it was extracted or if there was any records from it.

Q.  You -- so did you -- did you provide the prosecutors with the results of the phone search?

A.  I don't believe so.  I'm not sure.

MR. LAND:  Can we go off the record.

(At 2:54 p.m., off the record)

(At 2:55 p.m., on the record)

MR. LAND:  Yes, for the record, Detective Oliver said she did submit the search warrant, and she does not remember whether the -- she put the results of the search warrant in the prosecutor's file.  I am requesting that a follow-up be done and I be provided with the results of the search warrant and when they were submitted to the pros -- to the Detroit Police.

MR. PADDISON:  I'll certainly request it.

MR. LAND:  Okay.  Thank you, Ms. Oliver.

You can go to Exhibit -- Attachment 13.  And I'm going to have this marked as exhibit -- as Exhibit 14.

It's our Attachment 13.

(Exhibit 14 marked for identification,

Photograph)

BY MR. LAND:

Q.  Ms. Oliver, is that a picture of you (Indicating)?

**A.  Yes.**

Q.  That is.  Thank you, Ms. Oliver.

MR. LAND:  I want go to Exhibit 15.  And it's
Attachment 14.

(Exhibit 15 marked for identification,

Photograph)

BY MR. LAND:

Q.  Ms. Oliver, do you remember talking to Daniel White at
the Detroit Detention Center?

**A.  No.**

Q.  And you're under oath.  And you're under oath.

**A.  I did not speak with Daniel White at DDAC (Phonetic).**

Q.  Did you see Mr. Daniel White at the DDC?

MR. PADDISON:  Do you mean on video or in person?

BY MR. LAND:

Q.  In person?

**A.  No.  I don't believe I seen him in-person, because the
only time he was being interrogated by officers that were
not me and the photo lineup, I was in a different room.**

Q.  I understand that.  I'm speaking before the -- before he

was interrogated by Officer Grey and Officer Glover, do you remember speaking to Daniel White?

A.  No.

Q.  Okay.  Well he's positively identified you as the individual that he spoke to that told him that you knew it was not him on the -- because of the green light video.

MR. PADDISON:  Objection.  Assumes facts not in evidence.  Mischaracterizes prior testimony of Daniel White.  Relevance, and foundation.

MR. LAND:  I have no further questions.

EXAMINATION.

MR. PADDISON:  Okay, Officer Oliver, I think we got some things to clean up here.  I will try and get through this kind of quickly.

If we could go back to the statement taken by Detective Fletcher.  It's Exhibit 7.  I don't know what its attachment is marked as.

(Whereupon, videographer scrolls through the document)

MR. PADDISON:  The -- okay.  Yes, I believe that that is it (Indicating).  And could you please scroll to the second page.  Towards the bottom.

(Whereupon, videographer scrolls through the document)

MR. PADDISON:  Is that the right statement

(Indicating)?  No, what I'm looking for, that's not the

right one; there's another.  In fact, this is the one that

Walker gave to Fletcher.

(Scrolling)

MR. PADDISON:  That's what I'm looking for is the

--

MR. LAND:  This one (Indicating)?

MR. PADDISON:  No.  I've got the one I'm looking

for.  I'm trying to find the number.  No, it's a two-page

document.  I can pull it up if need be.

MR. LAND:  It's one from Fletcher?

MR. PADDISON:  Fletcher.

MR. LAND:  Here (Indicating).

MR. PADDISON:  Victim's statement is number one.

It's attachment one.  There it is (Indicating).

All right, this is what has been marked as

Deposition Exhibit 7 (Indicating).  For reference it's

attachment one.  If you could please turn to the second

page.

(Whereupon, second page of document is displayed)

BY MR. PADDISON:

Q.  Officer Oliver, do you recognize this document

(Indicating)?

A.  Yes.

Q.  Okay.  And was this document turned over with the materials that were submitted with your investigator's report to the Wayne County Prosecutor's Office?

A.  **Yes.**

Q.  Okay.  And in this document, at page two, does it identify the physical description given by the victim to Detective Fletcher?

A.  **Yes.**

Q.  Okay.  And what is that description?

A.  **Black male, 25 to 27, 5'9" to 5"10"; 135 pounds to 150; slim build; thin mustache; full beard, I believe; light complexed; wearing a black jacket.**

Q.  Okay, thank you very much.  And just to be clear, that was turned over to the Wayne County Prosecutor's Office?

A.  **Yes.**

MR. PADDISON:  Okay, can we please pull up -- I don't know what number it was marked as, but the photo lineup?  I don't know what exhibit number it was marked as, but lineup.  Marked as -- no, that's the instructions.

(Whereupon, photo lineup exhibit was displayed)

MR. PADDISON:  What exhibit number was that, the photo lineup?  Let me give it to you.  It's already been marked.  I just need to know what exhibit number.  Is it Exhibit 8?

MR. LAND:  No.  No, no, no.  It's Attachment 8.

MR. PADDISON:  Attachment 8 if that helps our

court reporter.  It's been marked as Exhibit 4.  I'll get

that pulled up here.  Actually I can pull it up.  I'll

probably share it on my screen.

VIDEOGRAPHER:  Which one are you looking for?

MR. PADDISON:  I think it's called Lineup

Selection.

VIDEOGRAPHER:  Is it the photos?

MR. PADDISON:  Yes.  This is Exhibit 4

(Indicating), but I --

VIDEOGRAPHER:  Right.  I have to go off what you

guys named them.

MR. PADDISON:  I don't blame you.  I got you.  I

think I got it on my screen.  I can pull it up here.

(Whereupon exhibit was displayed)

MR. PADDISON:  Nope, that's not the lineup

selection.  That's not it either (Indicating).  You know

which one I'm talking about?  This has gotten to be so

convoluted.  This one here if that helps (Indicating).

**THE WITNESS:  Are you asking me?**

MR. PADDISON:  No, I'm asking the court reporter

or the videographer.

VIDEOGRAPHER:  Yeah, that was the one I just had

up.

MR. PADDISON:  The pictures?  I didn't see it.

MR. LAND:  Yeah, he had it up.

VIDEOGRAPHER:  Let me get it back up.

MR. PADDISON:  Thank you very much.

MR. LAND:  You still need that?

MR. PADDISON:  No.

(Whereupon, document changed by videographer)

BY MR. PADDISON:

Q.  Okay.  Officer Oliver, do you recognize the document on the screen?

A.  Yes.

Q.  And this is a photo lineup that you prepared?

A.  Yes.

Q.  And Mr. White's image is pictured third from the left on the top row?

A.  Yes.

Q.  Okay.  The victim described the perpetrator of the crime as a black male, correct?

A.  Yes.

Q.  Is Mr. White a black male?

A.  Yes.

Q.  The perpetrator described the -- or excuse me -- the victim described the perpetrator as having light skin, correct?

A.  Yes.

Q.  Does Mr. White have light skin?

LaShauntia Oliver
02/02/2026                               Page 41

A.  Yes.

Q.  The victim described the perpetrator as having a full

beard, correct?

A.  Yes.

Q.  Does Mr. White have a full beard?

A.  Yes.

Q.  The victim described the perpetrator as having a

mustache, correct?

A.  Yes.

Q.  Does Mr. White have a mustache?

A.  Yes.

Q.  So with the exception of the age, weight, and hairstyle,

which we'll get to, the victim described Mr. White; is

that correct?

A.  Yes.

        MR. LAND:  Objection.  Objection.  That's leading

and not -- assuming facts not in evidence.

        MR. PADDISON:  Okay.

        MR. LAND:  And everything else.

BY MR. PADDISON:

Q.  Now, Officer Oliver, in terms of assessing a witness or a

victim's identification of a suspect or a person of

interest, are there factors that you have to consider in

terms of the reliability of that description?

A.  When I'm -- are you referring to when I'm making a lineup

or creating a lineup?

Q. No, no, I apologize.  Let me rephrase my question, ma'am.
Are there situational or circumstances that may affect
how reliable a description might be?

A. **Yes.**

Q. Okay.  If the witness or the victim viewed someone in a
high stress scenario, can that affect the reliability?

A. **Yes.**

Q. Would you consider an armed robbery a high stressed
scenario?

A. **Yes.**

Q. Does the length of time that the victim or witness has to
observe the perpetrator affect the reliability of the
description?

A. **Yes.**

Q. Based on your investigation, did Mr. Walker have an
opportunity to observe the assailant for an extended
period of time?

A. **No, not extended.**

Q. Okay.  Did the carjacking occur -- do you recall what
time approximately the carjacking occurred?

A. **I don't know the time; I just know it was nighttime, dark
outside.**

Q. Okay.  And does the available lighting affect the
reliability of a description?

LaShauntia Oliver
02/02/2026                                    Page 43

A.  Yes.

Q.  In your experience, can a victim or witness'
    intoxication, whether it be by alcohol or drugs, affect
    the reliability of their description?

A.  Yes.

Q.  Can -- if the perpetrator is wearing a jacket, in your
    experience can that affect the reliability of the
    description as to weight or build?

A.  Yes.

Q.  Can people -- how long would it take for someone to shave
    their head in your experience?

        MR. LAND:  Objection.  Assuming facts not in
    evidence.

A.  -- Inaudible --

BY MR. PADDISON:

Q.  Can you repeat that, ma'am?

A.  A minute or so.

Q.  Okay.  I'd like to pull up a video, if I may.  And I
    apologize; I will have to share the screen here.
        Officer Oliver, is it your understanding that
    officer Kelly Larson and her partner responded to the
    9-1-1 call following the carjacking?

A.  Yes.

Q.  Okay.  And Officer Larson generated a report based on
    that interaction, correct?

A.  Yes.

Q.  And that report was turned over to the Wayne County Prosecutor's Office, correct?

A.  Yes.

Q.  And do you recall viewing Officer Larson's body-worn camera?

A.  Yes.

Q.  Okay.  And I'd like to pull this up here if I may share my screen now.  Of course my computer is going to go slow here.

(Whereupon, a video clip was played)

MR. PADDISON:  I'm going to represent for the record that this is the body-worn camera of Officer Kelly Larson (Indicating).  We have fast forwarded to the time stamp of 0:04:43.

BY MR. PADDISON:

Q.  Now, Officer Oliver, I'd like you to listen to the description given by Mr. Walker?

A.  Okay.

MR. PADDISON:  And, of course my computer stops.  Off the record for just one moment, please.

(At 3:09 p.m., off the record)

(At 3:10 p.m., on the record)

(Whereupon, video clip continued)

MR. PADDISON:  All right, we got the video pulled

up.  Just to clarify the time stamp, we're beginning now on the body-worn camera of Kelly Larson at four minutes and thirty-four seconds.

BY MR. PADDISON:

Q.  Officer Oliver, can you hear all right?

**A.  Yes.**

Q.  All right.

**THE WITNESS:  Is the video supposed to be playing right now?**

MR. PADDISON:  Yes.  I'm sorry.  I probably should have shared that.

BY MR. PADDISON:

Q.  Do you see it now?

**A.  I don't see the video.  Now I see it, yes.**

MR. PADDISON:  Okay.

(Whereupon, video was restarted at 3:11 p.m.)

**THE WITNESS:  I'm not hearing the video.**

BY MR. PADDISON:

Q.  You're not hearing the video?  Let me try this and see if we can expedite this.  When you viewed the video, do you recall Mr. Walker describing the hairstyle of the assailant?

**A.  Yes.**

Q.  Okay.  Do you recall how he described the hairstyle of the assailant?

LaShauntia Oliver
02/02/2026                                              Page 46

A. I believe he was mentioning braids, but he -- I think he was saying maybe, maybe, or might.

Q. Okay.

A. It wasn't 100% or very accurate.

Q. That's good enough for our present purposes. I think it fairly represents the video.

Okay. Officer Oliver, when someone is arrested and being interrogated, is it possible for them to lie about not being involved in a crime?

A. Yes.

Q. Okay. So every person arrested doesn't immediately tell you the truth; is that fair?

A. Yes.

Q. I'd like to pull up a document here. And, Officer Oliver, we may have overlooked this previously. Let me share this screen here.

MR. PADDISON: And I would like to have this marked as Exhibit -- 16?

COURT REPORTER: Yes.

(Exhibit 16 marked for identification, Case Supplemental Report)

MR. LAND: What is that 16.

MR. PADDISON: It's going to be the case supplemental report of Karen Haynes.

MR. LAND: Exhibit 16.

MR. PADDISON: Sixteen.

BY MR. PADDISON:

Q. Okay, Officer Oliver, do you see the document on your screen?

A. Yes.

Q. Now let me ask you this. In a carjacking investigation, is the car itself considered a crime scene?

A. The car itself? No.

Q. Is the car considered evidence?

A. Yes.

Q. Okay. And are evidence techs specifically trained on how to evaluate, look for, and search for evidence?

A. Yes.

Q. Okay. Now, do you recognize generally the form of this document?

A. It's a supplement report.

Q. Okay. And can you tell when it's dated?

A. Yes.

Q. What's the date?

A. February 14th.

Q. Fourteenth?

A. Or --

Q. Here, I can zoom in for you?

A. -- February 4th.

Q. February 4th. So that -- is that the same day that Mr.

White was identified by Laurence Walker?

A. I don't believe so.  No.  February 3rd White was identified.

Q. Okay.  So on February 3rd Mr. White was identified as the assailant by Mr. Walker, and this report is generated February 4th, correct?

A. Yes.

Q. Okay.  So, obviously, February 4th comes after February 3rd, right?

A. Yes.

Q. Okay.  And if you could just briefly look over this and tell me what this document is (Indicating).  Let's try this -- go --

A. It is the --

Q. Go ahead.  I'm sorry.

A. It's the forensic type -- their supplement report just stating that what work was done, what worked they performed on the vehicle.

Q. Okay.  So under information received -- I want to make sure I read this correctly for the record -- it states, "On February 4, 2023 Crime Scene Services processed a vehicle per order of a work request received on February 3rd from officer L. Oliver of CATS."  Did I read that correctly?

A. Yes.

Q. And L. Oliver of CATS would be you, correct?

A. Yes.

Q. Okay. Does that refresh your recollection about any additional investigation you did after Mr. White was identified?

A. Yes.

Q. Okay. So in addition to the things previously discussed, you also had the vehicle inspected, correct?

A. Yes.

Q. Okay. I'd like to scroll down --

MR. LAND: What date was that?

MR. PADDISON: February 4th.

(Whereupon, videographer scrolled through the document)

BY MR. PADDISON:

Q. All right, I'd like to scroll down a little bit here. And you see where my cursor is in the photograph saying, "The interior of the vehicle is also noticeably clean and orderly"?

A. Yes.

Q. Okay. Now, at this point, this is February 4th, you had already heard that Mr. White claimed that he had purchased the vehicle, correct?

A. Yes.

Q. Okay. Now, I'd like you to read for the record the

sentence beginning with "A search..."

A. **"A search was conducted for any pertinent evidence germane to the incident. This search yield [sic] negative results."**

Q. Okay. And germane generally means relevant or necessary or important to the incident. Would there -- a bill of sale or a title transfer to Mr. White be relevant evidence to the incident?

A. **Yes.**

Q. Okay. But that was not discovered, correct?

A. **Correct.**

Q. Okay. Getting through this here. Just to be clear, you do not recall ever receiving the results of the search warrant for Mr. White's phone; is that correct?

A. **No.**

Q. Okay. Officer Oliver, when you submit a search warrant for a phone, how long does it take to get those results, or does it depend?

A. **It takes a -- it takes a while.**

Q. Okay. When you say a while, do you mean like a week, two weeks, a month?

A. **It can take longer than a month or a month about.**

Q. Okay.

A. **Again, it depends on what type of warrant.**

Q. Okay. Now, there's some confusion here in terms of

terminology which is why I want to clarify some things. The documents that were marked Deposition Exhibits 1 and 2 -- and just for your reference, those are the investigator's reports; the original and the amended. Do you know what I'm referring to?

A. Yes.

Q. Okay. I believe you described those documents as a summary, correct?

A. Yes.

Q. Now, is that -- are these investigator's reports a stand alone document or is it something that is attached to other documents and materials?

A. **It's one document, but it's attached to several other items --**

Q. Okay.

A. **-- that makes like a package.**

Q. Among those items are there the witness statements?

A. **Yes.**

Q. Are there audio or video recordings?

A. **Yes.**

Q. Body-worn camera recordings?

A. **Yes.**

Q. Interrogation recordings?

A. **Yes.**

Q. Detainee Input Sheets?

A.  Yes.

Q.  Okay.  And all of that was turned over to the Wayne County Prosecutor's Office?

A.  Yes.

Q.  Okay.  And that was turned over before the Investigator's Report was sent over, or with it or after if you remember?

A.  It should have been with it.

Q.  Okay.

A.  That's how --

Q.  Now, the reason that we have two separate investigator's report, why is that?

A.  Attorney Garcia, once I told him about the victim stating that he may have been drugged, he wanted me to include like an additional sentence or two.

Q.  Okay.  So Attorney Garcia knew about the victim stating that he believed he'd been drugged?

A.  Yes.

Q.  And Attorney Garcia knew about the gun?

A.  Yes.

Q.  Okay.  And let's see here.  Just to be perfectly clear, at any point did you speak to Daniel White at the Detroit Detention Center?

A.  No.

Q.  At any point did you speak to any family member of Daniel

White, to the best of your knowledge, at the Detroit Detention Center?

A. No.

Q. Okay. And my last question here.

MR. PADDISON: And if we could pull up -- let's see here -- the -- Officer Oliver's statement -- or excuse me -- interview statement with Mr. Walker. I lost track of what these were marked as. I believe it's Deposition Exhibit 6. I believe it's Attachment 2 for the videographer.

(Whereupon, new exhibit was displayed)

MR. PADDISON: And my battery is going to die. I'm almost done. I got 9%, fourteen minutes. So...

BY MR. PADDISON:

Q. For Oliver, do you recognize this document (Indicating)?

A. Yes.

Q. Okay. And is this the statement that you took from Laurence Walker?

A. Yes.

Q. And did you take the statement on February 2, 2023?

A. Can you scroll up just so I can see the date that I put down.

(Whereupon, videographer scrolled through the document)

A. Yes. Same document.

LaShauntia Oliver
02/02/2026                               Page 54

BY MR. PADDISON:

Q.  Okay.  And what time did this interview start?

A.  **Start time 11:45 a.m.**

Q.  And what time did the interview end?

A.  **12:50 p.m.**

Q.  And where did this interview take place?

A.  **1180 Oakland.**

Q.  Is that a precinct?

A.  **It's the CATS office.**

Q.  Okay.

A.  **Like the present.**

Q.  And during this interview, did you receive any additional information besides what Mr. Walker told you regarding this investigation?

A.  **Did I receive any additional information?**

Q.  Correct.  From someone other than Mr. Walker?

A.  **Yes.**

Q.  What information did you receive?

A.  **Leah, our -- what is that called?  I lost my train of thought.  Gosh, I can't think.  What is it called?  I'm having like a brain fart.  Not --**

Q.  All right, Officer Oliver, we --

A.  **The radio.  It was a radio.  I'm sorry.**

MR. PADDISON:  Let's go off the record for just a moment.  I have to grab my power cord.  I'll be right back.

(At 3:22 p.m., off the record)

(At 3:23 p.m., on the record)

BY MR. PADDISON:

Q.   Okay, I believe we left off that while you were interviewing Mr. Walker at the precinct you received some additional information via radio?

A.   **Yes.**

Q.   Okay, what information did you receive via radio?

A.   **I received that the members from CATS had the vehicle identified in, I believe, a parking lot and someone in custody.**

Q.   Okay.  So you were not present for Mr. White's arrest then?

A.   **No.**

Q.   Okay.  Now, this interview with Mr. Walker concluded at 12:50 p.m., correct?

A.   **Yes.**

Q.   What did you do after concluding that interview?

A.   **I believe I went to -- back to the gas station to get more video footage.**

Q.   Okay.  And would that be the video from the night of the carjacking itself?

A.   **Yes.**

Q.   And would that be the video for which we have the screenshot of the individual walking to the parking lot?

LaShauntia Oliver
02/02/2026                                    Page 56

A.  Yes.

Q.  Okay.  And was there anyone -- any other DPD personnel viewing that video with you?

A.  Usually we do have a partner that comes with us, or we'll ride separately but meet there.  So I'm pretty sure; I just don't remember who.

Q.  Okay.  Do you happen to remember whether it was a male officer or female officer?

A.  It was a male officer.

Q.  Okay.  And how is it that you remember that it was definitely a male officer?

A.  Because I believe at the time there were only myself and another female officer that worked in the unit.  It's primarily males.

Q.  Okay.  And do you know if that male officer was with you during the video, or was he kind of holding the perimeter?

A.  He may -- I'm not sure 100%, but either he was there with me or he was outside of the glass.  Because I know, I mean, sometimes we don't have -- we don't have to be like two people or two outfits inside of the -- behind the glass pretty much.

Q.  Okay.

A.  Just because, I mean, space and...

Q.  And after viewing that video what did you do?

A. I believe I requested -- I'm sure I requested an evidence request.

Q. And that means an evidence technician pulls the video for preservation?

A. Yes. Yes.

Q. Okay. So as of February 2, 2023, were you the only female officer to have viewed that video?

A. Yes.

Q. Okay. And if the records indicate that the video was extracted on February 4, 2023, would that mean that no other officer would have viewed that video before that date?

A. Correct. Yes.

Q. Okay. And just to be 100% clear, you were not present at the time Mr. White was arrested, correct?

A. No.

Q. Okay.

           MR. PADDISON: I have nothing further, Officer Oliver. Thank you very much.

           MR. LAND: Real quick, Oliver. Thank you so much for your patience too. Can you hear me?

           THE WITNESS: Yes.

           MR. LAND: Okay.

           RE-EXAMINATION

BY MR. LAND:

LaShauntia Oliver
02/02/2026                                            Page 58

Q. What time did you send the email to Garcia, if you know?

A. **I don't remember.  I don't have my emails.**

Q. But isn't it true that within less than fifteen minutes he responded back to you with the information about the -- additional information about the female?

A. **I don't know.  It depends on his case load for the day.**

Q. But it was a very short --

A. **I don't know.**

Q. It was a very short time; am I correct?  If you know.

A. **I don't.**

Q. Okay.  Okay.  And, you know what, I don't have to repeat.  You're under oath.  Did you have Facebook back in 2023?

A. **Yes.**

Q. Okay.  Do you -- did you -- did you do any investigation from Facebook?

A. **I don't believe so.**

Q. Okay.

A. **I'm not sure.**

Q. Do you know that at the deposition of Daniel White that Attorney Patterson stated, well I think we established that on the night of the 29th, and I agree with you.  Uh-huh, right.  You were at some party or some concert.  Do you know two and a half years after this incident, your attorney, Gregory Patterson, viewed Facebook and made the determination that Mr. White was at a party

through Facebook?

MR. PADDISON:  Objection.  Relevance.

Foundation.  Assumes facts not in evidence.

BY MR. LAND:

Q.  You can answer.  Did you know that?

A.  **No.  I don't believe so.**

Q.  Okay.  Did you ever view any footage of Mr. White at the gas station?  Have you ever seen Mr. White at the gas station?

MR. PADDISON:  Objection.  Speculation.

BY MR. LAND:

Q.  You can answer if you know.  You viewed the footage.  Did you see Mr. White at the gas station?

A.  **The person that I believed to be Mr. White.**

Q.  Listen to what I said.  Did you view -- did you see any -- did you see -- it's either a yes or a no.

MR. PADDISON:  No, it's not.  Mr. Land, it's not.  She testified very -- unequivocally what she viewed.

BY MR. LAND:

Q.  Okay.  So you believe that that photo with the young man in the black hoodie, you believe that's Mr. White?

A.  **I believe, yes.**

Q.  Okay.  That's fine.  Now, if the -- how long were you a Detroit police officer?

MR. PADDISON:  You're exceeding the scope of

LaShauntia Oliver
02/02/2026                                        Page 60

redirect, but go ahead.

MR. LAND: Come on.

**A. I believe close to four years maybe.**

BY MR. LAND:

Q. Okay. So do you understand that if a person is drunk, high you should -- do you agree that you should not take what they say -- what they say as gospel since they're out of their minds?

MR. PADDISON: Objection. Form and foundation. Relevance. Assumes facts not in evidence.

MR. LAND: I'm asking her opinions.

MR. PADDISON: If someone is out of their mind? I don't see that anywhere.

BY MR. LAND:

Q. I mean, if a person is drunk -- do you believe you should investigate further if a person is drunk instead of just taking what they said as truth?

**A. I don't know. I think it depends on the person. It depends on -- yeah, I believe it depends on the person. He was -- he may have been drunk. He may have not. I don't know. But he was able to drive. He was able to drive.**

Q. Okay. Well, I'm talking about Mr. Walker. And so, do you agree that he recalled that he had sex with the individual later?

LaShauntia Oliver
02/02/2026                                   Page 61

A.  Yes.

Q.  Okay.  So you had the vehicle inspected, according to your attorney, on February 4th?

A.  That's the date that evidence techs inspected the vehicle, yes.

Q.  You did not have it inspected prior to submitting a search warrant -- I mean, a request for arrest warrant?

A.  I mean --

        MR. PADDISON:  Objection.  Go ahead.  Go ahead.

A.  When he was -- when Mr. White was arrested, it's common practice, unless for -- when someone is arrested in a carjacked vehicle they'll make a quick search, make sure there is nothing like guns or anything inside the vehicle.  Because the vehicle was towed.  So I forgot the exact term that's used, but --

BY MR. LAND:

Q.  Okay.

A.  So search prior to being towed.

Q.  Okay.  So let me just get this.  Let me get this.  Let me understand this.  In the warrant for request -- in the written version, not the attachment -- you did not include the height --

        MR. PADDISON:  Objection.

BY MR. LAND:

Q.  -- am I correct?

LaShauntia Oliver
02/02/2026                                    Page 62

MR. PADDISON:  We've been over this three times.

BY MR. LAND:

Q.  Am I correct?

MR. PADDISON:  And just to verify you're talking about the investigator's report.

MR. LAND:  It states at the top of this document, "Request For Warrant."

MR. PADDISON:  Right.

MR. LAND:  And I'm speaking of Exhibit 1 and 2. Now, I want go over it just to clarify.  And, please, Paddison, come on.

MR. PADDISON:  We've been over this.  If there's -- there's no physical description.

BY MR. LAND:

Q.  So you did not include the height; am I correct?

**A.  The height was included on the attached sheet.**

Q.  I'm asking you on the -- in the investigator's report on the initial sheet?

**A.  I don't believe it's in there on the summary.**

Q.  Yep.  You did not include the weight?  Am I correct?

**A.  Yes.**

Q.  And you did not include that they had braids?

MR. PADDISON:  Objection.  Foundation.  Assumes facts not in evidence.

You can answer.

LaShauntia Oliver
02/02/2026                                          Page 63

A.   No.   Again, it was included on the Victim Statement form.

BY MR. LAND:

Q.   And you did not include that the victim stated that he possibly saw the person that robbed him at the gas station?

A.   **If it's not in the summary it's in the statement.**

Q.   And you did not include in the summary of the warrant for request that Garcia received that -- that his son was in the vehicle with him?

A.   **No.**

Q.   And you did not include that he paid $2,000 for the vehicle?

            MR. PADDISON:  Objection.  Form.  Foundation. Assumes facts not in evidence.

            You can answer to the extent that you know.

A.   **I don't know if he paid $200 or $2,000 for the vehicle.**

BY MR. LAND:

Q.   But did he state that?  Did you put in there that he stated he paid $2,000 for the vehicle?

A.   **It may have been on the -- well, if he said it, it was on the video that was sent over or sent with the package.**

Q.   Okay, I understand that.  But did you state it in the request for a warrant?

A.   **No.**

Q.   Did you state in the request for a warrant that he stated

the glove had the contents of how he purchased the

vehicle?

        MR. PADDISON: Objection. Foundation. Assumes

facts not in evidence.

BY MR. LAND:

Q. In the video, do you remember him stating the contents of

how he purchased the car was in the glove box?

**A. I'm not 100% sure, but probably. I don't know.**

Q. But if he did state that, you did not put that in the

request for a warrant in the summary portion?

**A. No, it's not in the summary portion.**

Q. Okay.

        MR. LAND: I'm done.

        MR. PADDISON: Just a couple of real quick

follow-up, Officer Oliver.

        RE-EXAMINATION

BY MR. PADDISON:

Q. Why do you think Mr. Walker didn't initially disclose

that he and Trinidad had sex in his vehicle?

        MR. LAND: Objection. That calls for

speculation.

        MR. PADDISON: Well it's her judgment. It's your

questioning.

        MR. LAND: That's still cause for speculation.

        Go ahead and answer.

LaShauntia Oliver
02/02/2026                                    Page 65

BY MR. PADDISON:

Q. I'm asking your opinion, Officer Oliver. Do you believe
   --

A. I think it --

Q. Go ahead. I'm sorry?

A. I think he may have been embarrassed.

Q. Okay.

A. Usually -- I mean, this hasn't -- this isn't the first
   time this happened where someone slept with someone and
   then was carjacked or robbed later on.

Q. Okay. And just to be clear, Mr. White was positively
   identified by Mr. Walker, correct?

A. Yes.

Q. And Mr. White was apprehended in the stolen vehicle,
   correct?

A. Yes.

Q. Okay. Officer Oliver, at the beginning of your
   deposition you were sworn under oath, correct?

A. Yes.

Q. Did you hear any of the attorneys get sworn under oath?

A. No.

Q. Okay. You know, Officer Oliver, is the knowing receipt
   of stolen property a crime?

A. I'm sorry, can you repeat that?

Q. Is the knowing receipt of stolen property a crime?

A.  Receiving stolen property?

Q.  Correct.

A.  Yes.

Q.  Okay.  Is accessory after the fact of carjacking a crime?

A.  Yes.

Q.  Okay.  Officer Oliver, has -- have social media searches been used in the past to assist in police investigations?

A.  They can, yes.

Q.  Are they always reliable?

A.  No.

Q.  Why not?

A.  It's just not reliable.  You can post something.  Like I can post that picture earlier that may or may not have been posted on the exact date of the event.  You can post a picture on Monday from a Saturday or Sunday or a whenever party.  It's not reliable.

Q.  So in other words, you can try to create an alibi through social media?

A.  You can, yes, yes.  Yes, absolutely.

Q.  Okay.

            MR. LAND:  Objection.  Assuming facts not in evidence.  But go ahead.

BY MR. PADDISON:

Q.  Officer Oliver, had the Wayne County Prosecutor's Office asked you to do a social media search, would you have

done it?

MR. LAND: Objection. Leading.

**A. Yes.**

BY MR. PADDISON:

Q. Officer Oliver, had the Wayne County Prosecutor's Office asked you to do anything further beyond what you did, would you have done it?

**A. No.**

Q. Let me be clear.

MR. LAND: Objection. Asked and answered. Asked and answered.

MR. PADDISON: I haven't asked the question yet.

MR. LAND: She just answered it.

BY MR. PADDISON:

Q. Officer Oliver, just to clarify, if Garrick Garcia asked you to search social media, you said you would have done it?

**A. Yes.**

Q. If -- and perhaps you misheard me. If the Wayne County Prosecutor's Office asked you to do more before submitting the warrant, would you have done that?

**A. Yes.**

Q. Okay. Has it happened in the past where you've submitted a warrant request and the Prosecutor's Office says, hey, I need you to go get additional evidence?

A.   Yes.

Q.   Okay.  So that's not unusual?

A.   Correct.  No.

Q.   Okay.  But if the Wayne County Prosecutor's Office says that they have enough fob probable cause then you discontinue your investigation?

A.   Yes.

            MR. PADDISON:  Okay, thank you.  Nothing further.

            MR. LAND:  I have nothing.

            MR. PADDISON:  Thank you very much, Officer Oliver.

            MR. LAND:  Best of luck to you, Ms. Oliver.  You know I was just doing my job.  You know I told you last time.  But good luck into your future endeavors.  I really men it.

            COURT REPORTER:  Orders?

            MR. PADDISON:  Yes.

            MR. LAND:  Yes.

            MR. PADDISON:  Can I get an etrans, please.

            MR. LAND:  I would like that as well.

            (At 3:40 p.m., proceedings concluded)

CERTIFICATE OF NOTARY

STATE OF MICHIGAN    )
                     )
COUNTY OF WAYNE      )

         I, Donna R. Rapp, Certified Shorthand Reporter, a Notary Public in and for the above county and state, do hereby certify that the above deposition was taken before me at the time and place hereinbefore set forth; that the witness was by me first duly sworn to testify to the truth, and nothing but the truth; that the foregoing questions asked and answers made by the witness were duly recorded by me stenographically to the best of my ability and reduced to computer transcription; that this is a true, full and correct transcript of my stenographic notes so taken.  I further certify that I am not related to, nor of counsel to either party, nor interested in the event of this cause.


DONNA R. RAPP, CSR 6253


My Commission expires 9/15/2028

**LaShauntia Oliver**
**02/02/2026**                                                                          1

**$**

**$2,000**  20:16 63:11,16,19
**$200**  63:16

**(**

**(phonetic)[sic**  5:2

**0**

**0:04:43**  44:15

**1**

**1**  9:10,14,19 28:20,22 51:2
  62:9
**10**  22:25 23:1
**100%**  46:4 56:18 57:14 64:8
**11**  23:12,13 31:22
**1180**  54:7
**11:45**  54:3
**12**  31:23,24
**12:50**  54:5 55:16
**13**  33:22 34:2,24 35:1
**130**  17:10 18:2,18
**135**  38:10
**13th**  32:4
**14**  33:21 34:25 35:2,9
**14th**  47:20
**15**  35:8,10
**150**  38:10
**16**  46:18,20,22,25
**160**  17:9
**190**  24:9

**2**

**2**  4:2 13:9 14:1,23 15:8 28:18,

19,21,22 51:3 53:9,20 57:6
62:9
**2023**  6:19 8:16,22 12:20 48:21
  53:20 57:6,10 58:12
**2024**  5:21,22
**2026**  4:2
**23**  7:2 17:8 18:2,18
**25**  7:3 17:8 18:2,18 38:10
**25-cv-10306**  5:5
**27**  38:10
**29**  6:19
**29th**  58:21
**2:04**  4:3
**2:16**  13:14
**2:17**  13:15
**2:32**  23:4
**2:34**  23:5
**2:54**  34:13
**2:55**  34:14

**3**

**3**  12:20 14:24 18:25 25:9,11
**30**  8:15,22 30:24
**30th**  9:4 11:5,21,24
**31**  8:16,22
**31st**  9:6 11:8,20,24
**3:09**  44:22
**3:10**  44:23
**3:11**  45:16
**3:22**  55:1
**3:23**  55:2
**3:40**  68:21
**3rd**  48:2,4,9,23

**4**

**4**  22:7 31:6 39:2,9 48:21 57:10
**41**  24:4,7
**42**  24:7
**4th**  47:24,25 48:6,8 49:12,21
  61:3

**5**

**5**  23:3
**5"10**  38:10
**5'10"**  28:1
**5'9"**  38:10

**6**

**6**  14:11 16:1 53:9

**7**

**7**  36:17 37:18

**8**

**8**  31:6 38:24,25 39:1

**9**

**9**  9:12,13,14,15 10:1,10 22:5,
  6,10 28:22
**9%**  53:13
**9-1-1**  43:22

**A**

**a.m.**  54:3
**absolutely**  66:19
**accessory**  66:4
**accurate**  46:4
**action**  23:24


HANSON RENAISSANCE
COURT REPORTERS & VIDEO    hansonreporting.com
313.567.8100

**LaShauntia Oliver**
**02/02/2026**

2

**Actions** 31:25

**actual** 18:8

**adamant** 20:3,5,6

**addition** 49:7

**additional** 49:4 52:15 54:12, 15 55:6 58:5 67:25

**Admissions** 19:22

**affect** 42:3,7,13,24 43:3,7

**afternoon** 4:4,23,24

**age** 7:3 24:4 41:12

**ages** 18:2

**agree** 58:21 60:6,24

**agreement** 4:9

**ahead** 5:24 29:5 48:15 60:1 61:9 64:25 65:5 66:22

**alcohol** 43:3

**alibi** 66:17

**allegedly** 6:23

**ambiguity** 30:10

**amended** 51:4

**answers** 5:9

**Anthony** 13:17

**apologize** 42:2 43:19

**apprehended** 65:14

**approximately** 42:21

**Argumentative** 26:15

**armed** 42:9

**arrest** 8:12,14 26:5 27:15 28:4 55:12 61:7

**arrested** 26:23 46:7,11 57:15 61:10,11

**assailant** 42:17 45:22,25 48:5

**assessing** 41:21

**assigned** 7:17 9:5 11:5

**assist** 66:7

**assume** 15:9

**Assumes** 8:17,24 12:15 16:6, 25 17:12 18:20 24:21 26:25 27:17 33:11 36:8 59:3 60:10 62:23 63:14 64:3

**assuming** 41:17 43:12 66:21

**attached** 31:1,2 51:11,13 62:16

**attachment** 9:12,14,15,22 10:1,2,10 13:3,9,22 14:1,11, 12,21 15:8 19:1 22:7 23:3 28:22 31:6,22 33:21 34:24 35:1,9 36:18 37:16,19 38:25 39:1 53:9 61:21

**attachments** 13:23 31:3

**attention** 9:9 11:4

**attorney** 4:25 52:13,16,19 58:20,24 61:3

**attorneys** 65:20

**audio** 51:19

**aware** 6:14 32:5

**awhile** 31:18

**B**

**back** 6:19 7:20,23 8:6 9:8 28:16 36:16 40:2 54:25 55:19 58:4,12

**bag** 19:5 25:11

**bald** 24:17

**based** 42:16 43:24

**battery** 53:12

**beard** 38:11 41:3,5

**began** 29:15

**beginning** 45:1 50:1 65:17

**believed** 25:2 52:17 59:14

**Bessemore** 16:18 17:6

**bill** 50:6

**bit** 10:24 49:16

**black** 11:16 19:10,13,15 27:23 38:10,12 40:17,19 59:21

**blame** 39:13

**body-worn** 44:5,13 45:2 51:21

**bottom** 36:23

**box** 20:19 21:9,13,15 22:10, 11,12 23:9 64:7

**BP** 16:16

**braids** 17:9 18:5,6 27:25 46:1 62:22

**brain** 54:21

**Breeze** 16:17

**briefly** 48:11

**brother** 13:21

**brought** 16:17

**build** 38:11 43:8

**C**

**call** 14:7,25 43:22

**called** 8:5 10:11 27:21 39:6 54:19,20

**calls** 64:20

**camera** 44:6,13 45:2 51:21

**car** 16:20 21:22 47:7,8,9 64:7

**carjacked** 6:24 26:8,10 61:12 65:10

**carjacking** 26:23 42:20,21 43:22 47:6 55:22 66:4

**carrying** 25:11

**case** 5:3,4 6:21 9:6 11:5 32:18 46:20,23 58:6

**CATS** 48:23 49:1 54:9 55:9

**cell** 7:20,23 8:5,6 11:11

**Center** 35:14 52:23 53:2

**certified** 4:6

**changed** 40:6



HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313.567.8100

LaShauntia Oliver
02/02/2026                                                                    3

charge  17:17,20 21:14

charges  23:24

chest  27:13

circumstances  42:3

City  5:2

claimed  49:22

clarify  12:16 14:13 30:7 45:1
    51:1 62:10 67:15

clean  36:14 49:18

clear  28:5 38:13 50:12 52:21
    57:14 65:11 67:9

clip  44:11,24

close  60:3

colleagues  19:25

Commander  13:17

common  61:10

compelled  23:20

complexed  38:12

computer  44:9,20

concern  7:23,25

concerned  22:21

concert  58:22

concluded  55:15 68:21

concluding  55:18

conducted  50:2

confuse  14:12

confusion  50:25

considered  47:7,9

contact  7:24 32:15 33:14

contacted  11:8

contents  21:14 64:1,6

continuation  13:21

continue  13:19 23:21 25:14,
    15,24

continued  44:24

convoluted  39:19

cool  11:22

cord  54:25

correct  4:11,12,13 7:15 9:22
    11:6,9,17,20,24 14:14 15:15,
    16 17:18,21,22,23 18:3,5
    24:1,6,11,20 34:3 40:17,23
    41:3,8,14 43:25 44:3 48:6
    49:1,8,23 50:10,11,14 51:8
    54:16 55:16 57:13,15 58:9
    61:25 62:3,15,20 65:12,15,18
    66:2 68:3

correctly  48:20,24

counsel  4:9,10 13:18,21

County  19:20 25:5 38:3,14
    44:2 52:3 66:24 67:5,19 68:4

couple  64:14

court  4:4,14 5:3,8 9:11,13
    13:13,24 31:21 32:5,14 33:5,
    19 39:2,21 46:19 68:16

create  66:17

creating  42:1

crime  23:23 40:16 46:9 47:7
    48:21 65:23,25 66:4

criminal  25:17 26:5

cursor  49:17

custody  55:11

cut  27:9

D

Daniel  5:1 6:10 19:25 20:3,5,
    15,18 21:4,8,16 24:2,4 25:16
    26:7 28:1 35:13,17,18 36:2,9
    52:22,25 58:19

dark  16:15 42:22

dark-colored  19:18

date  47:19 49:11 53:21 57:12
    61:4 66:14

dated  47:17

dates  8:20

day  9:5 12:14 47:25 58:6

days  8:15,23

DDAC  35:17

DDC  20:8 35:18

decide  33:9

decided  13:19

depend  50:18

depends  50:24 58:6 60:18,19

deposition  4:1,6 5:6 13:17
    37:18 51:2 53:8 58:19 65:18

describing  45:21

description  26:21 29:22 30:3,
    13,16 38:6,9 41:24 42:4,14,25
    43:4,8 44:18 62:13

descriptions  28:13

Detainee  51:25

detect  29:21

Detective  27:7 30:19 34:15
    36:17 38:7

Detention  35:14 52:23 53:2

determination  58:25

Detroit  5:2,17,20 7:24 10:13
    28:19 34:21 35:14 52:22 53:1
    59:24

die  53:12

discipline  6:11

disclose  64:18

discontinue  68:6

discovered  50:10

discussed  13:18 49:7

discussion  12:16,19,21,24

dismissed  32:4

disparity  26:21

displayed  13:5 19:2 28:23
    29:11 37:21 38:20 39:15
    53:11



HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313.567.8100

LaShauntia Oliver
02/02/2026
4

**District** 5:3,4

**Division** 5:4

**document** 10:11 13:5 14:8,9, 10,14,23 19:2 28:3,23 29:16 33:25 36:20,25 37:11,21,23 38:1,5 40:6,8 46:14 47:3,15 48:12 49:14 51:11,13 53:15, 24,25 62:6

**documentation** 22:12

**documented** 27:14

**documents** 22:14 30:21,22 51:2,7,12

**Donna** 4:5

**doubt** 21:10

**DPD** 56:2

**draw** 9:9 11:3

**drive** 60:21,22

**driver's** 16:15,16

**dropped** 11:12

**drugged** 52:14,17

**drugs** 43:3

**drunk** 60:5,15,16,20

**dude** 16:3,15,23 17:4

**duly** 4:21

**Dyke** 11:13

**E**

**earlier** 12:14 66:13

**easily** 27:9

**Eastern** 5:3

**easy** 14:3

**email** 58:1

**emails** 58:2

**embarrassed** 65:6

**empty** 23:9

**end** 33:7 54:4

**endeavors** 68:14

**entire** 28:7

**equipment** 4:7

**established** 58:20

**etrans** 68:19

**evaluate** 47:12

**event** 66:14

**eventually** 16:24

**evidence** 8:18,25 12:4,8,16 16:7 17:1,12 18:20 22:24 24:22 26:25 27:17 33:11 36:9 41:17 43:13 47:9,11,12 50:2,8 57:1,3 59:3 60:10 61:4 62:24 63:14 64:4 66:22 67:25

**exact** 30:25 61:15 66:14

**EXAMINATION** 5:15 36:12

**examined** 4:21

**exceeding** 59:25

**exception** 41:12

**excuse** 17:9 29:21 40:21 53:6

**exhibit** 9:10,13,14,19 13:20,21 14:1,11 16:1 18:25 22:5,6,10, 25 23:1,12,13 25:9,11 28:18, 19,20,21,22 31:6,23,24 33:22 34:2,24,25 35:2,8,10 36:17 37:18 38:18,20,21,23,24 39:2, 9,15 46:18,20,25 53:9,11 62:9

**exhibits** 13:19 51:2

**expedite** 45:20

**experience** 43:2,7,11

**explained** 30:2

**extended** 42:17,19

**extent** 7:6 8:19 9:1 18:22 63:15

**extracted** 34:7 57:10

**F**

**Facebook** 58:12,15,24 59:1

**fact** 8:14 37:3 66:4

**factors** 41:23

**facts** 8:18,24 12:15 16:7 17:1, 12 18:20 24:21 26:25 27:17 33:11 36:8 41:17 43:12 59:3 60:10 62:24 63:14 64:4 66:21

**failed** 26:12 32:5

**fair** 12:12 46:12

**fairly** 46:6

**familiar** 20:17 31:16

**family** 52:25

**fart** 54:21

**fast** 44:14

**February** 4:2 12:20 47:20,24, 25 48:2,4,6,8,9,21,23 49:12, 21 53:20 57:6,10 61:3

**feel** 23:20

**female** 11:13,16 12:1 56:8,13 57:7 58:5

**fifteen** 58:3

**file** 34:18

**find** 37:10

**fine** 14:4,5 15:6,19 29:2,7 59:23

**finished** 5:25

**fired** 5:22

**Fletcher** 27:3,7,23 30:3,19 36:17 37:4,12,13 38:7

**fob** 68:5

**follow-up** 32:7,13 34:19 64:15

**footage** 8:10,15,23 9:4 55:20 59:7,12

**forensic** 48:16

**forgot** 61:14

**form** 16:6,25 17:11 18:20 21:2 26:24 27:16 47:14 60:9 63:1, 13



HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313.567.8100

LaShauntia Oliver
02/02/2026                                             5

**forwarded**  18:10 44:14

**foundation**  17:11 18:21 26:24 27:16 33:12 36:10 59:3 60:9 62:23 63:13 64:3

**fourteen**  53:13

**Fourteenth**  47:21

**full**  38:11 41:2,5

**future**  68:14

**G**

**Garcia**  52:13,16,19 58:1 63:8 67:15

**Garrick**  67:15

**gas**  8:10 12:14 14:24 16:3,23 19:4 24:19 25:3 55:19 59:8,13 63:4

**gave**  30:3 37:4

**generally**  47:14 50:5

**generated**  43:24 48:5

**gentleman**  12:13

**germane**  50:3,5

**girl**  16:16,19

**give**  4:16 27:25 38:22

**glass**  56:19,22

**glove**  20:19 21:9,13,15 22:10, 11,12 23:9 64:1,7

**Glover**  27:3 36:1

**good**  4:4,23,24 46:5 68:14

**Gosh**  54:20

**gospel**  60:7

**grab**  54:25

**Gratiot**  16:17 17:6

**green**  36:6

**Gregory**  58:24

**Grey**  19:25 36:1

**guess**  5:12 7:9

**gun**  27:12 52:19

**guns**  61:13

**guy**  17:8

**guy's**  14:9

**guys**  14:22 39:12

**H**

**hair**  27:9

**hairstyle**  41:12 45:21,24

**half**  58:23

**hand**  4:15

**Hanson**  13:3 22:7 29:4,9 31:7 33:20

**happen**  56:7

**happened**  32:11 65:9 67:23

**Haynes**  46:24

**head**  24:17 27:13 43:11

**hear**  45:5 57:21 65:20

**heard**  49:22

**hearing**  45:17,19

**heavier**  27:11

**height**  27:25 28:2 61:22 62:15, 16

**held**  4:7

**helpful**  14:25

**helps**  14:7 39:1,19

**hey**  67:24

**high**  42:7,9 60:6

**history**  25:17

**hold**  14:20

**holding**  56:16

**hoodie**  59:21

**hours**  18:11

**hug**  16:14

**I**

**identification**  22:6 23:1,13,20 26:18 31:24 33:22 35:2,10 41:22 46:20

**identified**  17:8 25:21,22,23 26:3 36:4 48:1,3,4 49:5 55:10 65:12

**identify**  38:6

**IDING**  26:6

**image**  40:13

**immediately**  46:11

**important**  50:6

**in-person**  35:22

**Inaudible**  43:14

**incident**  6:21 50:3,6,8 58:23

**include**  28:12 29:22 30:1 52:14 61:22 62:15,20,22 63:3, 7,11

**included**  27:19 30:5,6 62:16 63:1

**incur**  23:24

**Indicating**  9:23 10:5,7,8,25 13:7 19:5 23:9 29:7 35:5 36:22 37:2,8,14,16,18,24 39:10,17,19 44:14 48:12 53:15

**indicating0**  30:8

**individual**  7:2 23:22,23 24:19 31:12 36:5 55:25 60:25

**individuals**  31:7

**information**  48:19 54:13,15,18 55:6,8 58:4,5

**informed**  7:19 8:5

**initial**  7:1 62:18

**initially**  64:18

**ink**  18:11,15

**Input**  51:25

**inside** 16:16 17:5 21:17 22:12 30:13,16 56:21 61:13

**inspected** 49:8 61:2,4,6

**instruction** 23:12

**instructions** 23:14,17 38:19

**intake** 24:15

**interaction** 43:25

**interest** 33:6 41:23

**interior** 49:18

**interrogated** 35:23 36:1 46:8

**Interrogation** 51:23

**interview** 20:10,12 21:23 53:7 54:2,4,6,12 55:15,18

**interviewed** 12:25 19:25 27:3, 7 30:19

**interviewing** 12:6,12 21:24 55:5

**intoxication** 43:3

**investigate** 60:16

**investigated** 25:16

**investigating** 26:13 32:25 33:9

**investigation** 10:25 11:4 17:18 23:21 25:14,15,24 42:16 47:6 49:4 54:14 58:14 68:6

**investigations** 66:7

**investigative** 30:8

**investigator's** 10:16 18:9 28:6 29:24 31:1 38:2 51:4,10 52:5, 11 62:5,17

**involved** 23:23 33:7 46:9

**issue** 11:19 27:10

**issued** 8:12,15

**items** 51:14,17

**Ivan** 4:25

### J

**jacket** 19:10,13,16 38:12 43:6

**January** 6:19 8:15,16,22 11:5, 20,21,24

**job** 68:13

**judgment** 64:22

### K

**Karen** 46:24

**Kelly** 43:21 44:13 45:2

**kind** 36:15 56:16

**knew** 9:21 36:5 52:16,19

**knowing** 65:22,25

**knowledge** 53:1

### L

**labeled** 14:22 15:1

**lacks** 33:11

**lady** 16:4

**Land** 4:12,23,25 5:14,16 6:1,5, 15 7:10 8:21 9:2,11,14,16,19, 21,25 10:4,6,8,13,18,21,23 11:2,22,23 12:18 13:3,6,9,12 14:2,6,10,15,17,20 15:11,13, 16,19,23,24 16:12 17:7,16 18:12,14,16,24 19:3 21:6 22:5,7,8,25 23:3,6,15 24:13, 23 26:2,19 27:4,24 28:8,10, 19,24 29:3,9,13,19,20 30:11, 15 31:5,8,20,22 32:1,24 33:17,20,24 34:12,15,23 35:4, 8,12,20 36:11 37:8,12,14 38:25 40:1,4 41:16,19 43:12 46:22,25 49:11 57:20,23,25 59:4,11,17,19 60:2,4,11,14 61:16,24 62:2,6,9,14 63:2,17 64:5,13,20,24 66:21 67:2,10, 13 68:9,12,18,20

**Larson** 43:21,24 44:14 45:2

**Larson's** 44:5

**Lashandria** 5:2

**LASHAUNTIA** 4:20

**Laurence** 6:20 7:14 12:3,6,12 48:1 53:18

**leading** 41:16 67:2

**Leah** 54:19

**learn** 17:25

**left** 33:8 40:13 55:4

**length** 42:12

**lie** 46:8

**light** 36:6 38:11 40:22,25

**light-skinned** 16:3,10,14,19, 23 17:4 27:23

**lighting** 42:24

**lineup** 23:11,13,17 25:7,21,23 26:4 31:7,12,15 35:24 38:18, 19,20,22 39:6,16 40:11 41:25 42:1

**listen** 44:17 59:15

**live** 32:19

**load** 58:6

**location** 11:15 17:5 20:9

**log** 22:24

**long** 43:10 50:17 59:23

**longer** 5:17 50:22

**looked** 25:16

**lost** 53:7 54:19

**lot** 55:10,25

**luck** 68:12,14

### M

**made** 11:15 12:20 26:17 58:25

**make** 14:2 23:18,20,22 31:11 32:15 48:19 61:12

**makes** 51:16

**making**  41:25

**male**  16:10 18:1 19:20 27:23 29:22 38:10 40:17,19 56:7,9, 11,15

**males**  31:12 56:14

**man**  19:4 25:2,11 59:20

**March**  32:4

**mark**  13:10 23:12

**marked**  9:10 13:11,25 14:10 16:1 18:25 22:5,6,9,25 23:1, 13 31:5,24 33:16,17,22 34:25 35:2,10 36:18 37:17 38:17,18, 19,23 39:2 46:18,20 51:2 53:8

**material**  32:8,12 33:1

**materials**  38:2 51:12

**matter**  4:17 5:1 6:10 7:17 8:14 17:21,23 25:13 28:21 32:4

**means**  50:5 57:3

**media**  66:6,18,25 67:16

**meet**  56:5

**member**  52:25

**members**  55:9

**men**  68:15

**mention**  21:20

**mentioned**  19:21

**mentioning**  46:1

**messages**  20:13

**Michigan**  4:5 5:4

**mind**  60:12

**minds**  60:8

**minute**  43:17

**minutes**  45:2 53:13 58:3

**Mischaracterizes**  8:25 18:19 25:25 26:14 33:10 36:9

**misheard**  67:19

**moment**  14:19 44:21 54:25

**Monday**  4:2 66:15

**month**  50:21,22

**mother's**  8:5

**move**  23:11

**mustache**  38:11 41:8,10

---

**N**

---

**named**  14:9 39:12

**necessarily**  13:24

**negative**  50:4

**night**  55:21 58:21

**nighttime**  27:12 42:22

**notary**  4:5

**notes**  32:18

**noticeably**  49:18

**number**  5:4 14:23,24,25 30:25 31:20 33:17,21 37:10,15 38:17,18,21,23

**numbered**  13:22

**numbering**  13:19

---

**O**

---

**O'ROURKE**  13:18

**Oakland**  54:7

**oath**  4:22 30:20 35:16 58:12 65:18,20

**objection**  6:2,12 7:4 8:17,24 12:15 16:6,25 17:11 18:19 21:2 25:25 26:14,24 27:16 33:10 36:8 41:16 43:12 59:2, 10 60:9 61:9,23 62:23 63:13 64:3,20 66:21 67:2,10

**observe**  42:13,17

**observed**  11:16 12:1

**obtain**  21:14 32:8

**obtained**  26:4

**occur**  42:20

**occurred**  42:21

**office**  12:25 25:6 30:1 38:3,14 44:3 52:3 54:9 66:24 67:5,20, 24 68:4

**officer**  5:18,20 6:16 11:15 17:17,20 19:19,24,25 21:12, 14,16 27:2,6,23 30:3 36:1,13 37:23 40:8 41:21 43:20,21,24 44:5,13,17 45:5 46:7,14 47:3 48:23 50:16 53:6 54:22 56:8, 9,11,13,15 57:7,11,18 59:24 64:15 65:2,17,22 66:6,24 67:5,15 68:10

**officers**  7:1 20:13 21:20 27:20 35:23

**Oliver**  4:14,19,20,23 5:2 11:3, 15 15:25 18:14 19:19,24 22:9 23:7,16,19 24:1,8 29:1,21 31:9,17,19 32:2 33:25 34:15, 23 35:5,7,13 36:13 37:23 40:8 41:21 43:20 44:17 45:5 46:7, 15 47:3 48:23 49:1 50:16 53:15 54:22 57:19,20 64:15 65:2,17,22 66:6,24 67:5,15 68:11,12

**Oliver's**  53:6

**opinion**  65:2

**opinions**  60:11

**opportunity**  42:17

**order**  15:4 31:10 48:22

**orderly**  49:19

**Orders**  68:16

**original**  10:16 51:4

**outfits**  56:21

**overlooked**  46:15

---

**P**

---

**p.m.**  4:3 13:14,15 23:4,5 34:13,14 44:22,23 45:16 54:5 55:1,2,16 68:21

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313.567.8100

LaShauntia Oliver
02/02/2026                                                                                8

package  51:16 63:21

packet  28:7 30:1

Paddison  4:13 5:24 6:2,12 7:4
  8:17,24 9:15,18,20 10:2,5,7,
  11,15,19,22 11:20 12:15
  13:11,16 14:4,13 15:2,6 16:6,
  25 17:11 18:19 21:2 22:24
  24:12,21 25:25 26:14,24
  27:16 28:5 30:7 32:21 33:10
  34:22 35:19 36:8,13,21 37:1,
  6,9,13,15,22 38:16,21 39:1,6,
  9,13,16,21,25 40:3,5,7 41:18,
  20 43:15 44:12,16,20,25 45:4,
  10,12,15,18 46:17,23 47:1,2
  49:12,15 53:5,12,14 54:1,24
  55:3 57:18 59:2,10,17,25
  60:9,12 61:9,23 62:1,4,8,11,
  12,23 63:13 64:3,14,17,22
  65:1 66:23 67:4,12,14 68:8,
  10,17,19

pages  18:13 30:8,24

paid  63:11,16,19

papers  22:13,20

paperwork  20:19 21:9,13,17

paragraph  23:18

parking  55:10,25

parties  13:18

partner  43:21 56:4

party  58:22,25 66:16

passenger  16:14

past  66:7 67:23

patience  23:7 57:21

Patterson  58:20,24

pen  16:17

people  27:11 43:10 56:21

perfectly  52:21

performed  48:18

perimeter  56:17

period  42:18

perpetrator  40:16,21,22 41:2,
  7 42:13 43:6

person  4:11 10:21 20:4 26:21,
  22 35:19,21 41:22 46:11
  59:14 60:5,15,16,18,19 63:4

personnel  56:2

pertinent  50:2

phone  7:20,23 8:5,6 11:11,12
  12:1,4,8 18:7 34:6,7,10 50:14,
  17

Phonetic  35:17

photo  14:25 19:7,19 22:11
  25:5,7,8,21,22,23 26:3 28:14
  31:6,15 35:24 38:17,20,22
  40:11 59:20

photograph  22:6 23:2 35:3,11
  49:17

photos  22:14,20,22 39:8

physical  29:22 38:6 62:13

picks  25:13

picture  35:5 66:13,15

pictured  40:13

pictures  39:25

place  6:2 7:4 54:6

Plaintiff's  18:25

played  44:11

playing  45:8

point  7:14 17:25 49:21 52:22,
  25

police  5:17,20 6:16 7:24 10:13
  23:24 28:20 34:21 59:24 66:7

Porcha  6:10

portion  64:10,11

positive  26:17

positively  25:21,22,23 26:6
  36:4 65:11

possession  11:12 26:7,9

possibly  63:4

post  66:12,13,14

posted  66:14

pounds  17:10 18:2,18 24:9
  38:10

power  54:25

practice  61:11

precinct  54:8 55:5

prepared  7:11 40:11

present  46:5 54:11 55:12
  57:14

preservation  57:4

pretty  8:6 21:25 29:25 31:13
  56:5,22

previously  11:21 13:23 14:10
  16:1 18:25 31:5 46:15 49:7

primarily  56:14

print  29:5,6

prior  13:16,21 16:4 18:19
  33:10 36:9 61:6,18

probable  26:6,9,17 68:5

proceed  15:18

proceedings  68:21

processed  48:21

promise  4:16

property  65:23,25 66:1

pros  34:20

prosecuting  33:6

prosecutor  19:20 28:12

prosecutor's  25:5 30:1 34:18
  38:3,14 44:3 52:3 66:24 67:5,
  20,24 68:4

prosecutors  34:9

provide  34:9

provided  25:5 34:19

public  4:5

pull  28:16 37:11 38:16 39:3,14
  43:18 44:8 46:14 53:5

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313.567.8100

LaShauntia Oliver
02/02/2026

9

**pulled** 39:3 44:25

**pulls** 57:3

**purchased** 20:16 49:23 64:1,7

**purposes** 46:5

**pursuant** 4:9

**put** 9:22 19:11 34:17 53:21 63:18 64:9

---

**Q**

**question** 5:7 16:10,21 21:3 24:25 26:11,20 42:2 53:4 67:12

**questioning** 64:23

**questions** 36:11

**quick** 57:20 61:12 64:14

**quickly** 36:15

---

**R**

**radio** 54:23 55:6,8

**raise** 4:14

**ran** 18:11,15

**Rapp** 4:5

**RE-EXAMINATION** 57:24 64:16

**reach** 32:15

**reached** 33:4

**read** 23:16,17,18 48:20,23 49:25

**reading** 17:3 19:12,14 22:1

**ready** 32:2

**real** 57:20 64:14

**reason** 21:10 26:4 52:11

**recall** 7:8 19:15 42:20 44:5 45:21,24 50:13

**recalled** 60:24

**receipt** 65:22,25

**receive** 6:11 54:12,15,18 55:8

**received** 7:20,23 22:23 48:19, 22 55:5,9 63:8

**receiving** 50:13 66:1

**recognize** 37:23 40:8 47:14 53:15

**recollection** 49:3

**record** 13:13,14,15,16 18:12, 14 23:4,5,16 25:17 26:5 30:20 34:12,13,14,15 44:13,21,22, 23 48:20 49:25 54:24 55:1,2

**recordings** 51:19,21,23

**records** 34:8 57:9

**redirect** 60:1

**refer** 31:13,14

**reference** 13:20 37:18 51:3

**referring** 12:17,25 13:6,20,22 15:10 28:6,8 41:25 51:5

**refers** 13:22

**reflect** 13:16 18:14

**reflected** 32:17,18

**reflects** 20:25

**refresh** 49:3

**Register** 31:24

**relevance** 6:3,12 36:10 59:2 60:10

**relevant** 50:5,7

**reliability** 41:24 42:7,13,25 43:4,7

**reliable** 42:4 66:9,12,16

**remember** 6:20,23 7:1,9,22 12:21,24 18:17 19:7,9,12,14, 24 20:3,5,6,8,12,15,18 32:21, 22,23 33:25 34:17 35:13 36:2 52:7 56:6,7,10 58:2 64:6

**remind** 5:7

**remote** 4:1 20:9

**remotely** 4:9

**repeat** 5:11 16:10 26:12 43:16 58:11 65:24

**rephrase** 42:2

**report** 5:8 7:8,11 8:25 10:17 18:8,9 19:11,12 28:6 29:25 30:8 31:1 32:17 38:3 43:24 44:2 46:21,24 47:16 48:5,16 52:6,12 62:5,17

**reporter** 4:4,6,8,14 5:8 9:11,13 13:13,24 31:21 33:19 39:2,21 46:19 68:16

**reports** 18:10 51:4,10

**represent** 44:12

**representing** 5:1

**represents** 46:6

**request** 7:12 10:12,13 19:22 28:4,8,11,14,15,20 29:23 30:6,9,12,22 33:1,22 34:2,22 48:22 57:2 61:7,20 62:7 63:8, 23,25 64:10 67:24

**requested** 57:1

**requesting** 22:22 34:18

**resign** 6:8

**responded** 43:21 58:4

**responsible** 17:20

**restarted** 45:16

**results** 34:5,6,10,17,19 50:4, 13,17

**retire** 5:23

**returned** 9:8

**review** 7:11 17:23 27:6

**reviewed** 8:9,15,22

**reviewing** 17:21

**ride** 56:5

**robbed** 6:24 12:13 16:3,24 18:1 63:4 65:10

**robbery** 42:9

**room** 4:8 35:24

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313.567.8100

LaShauntia Oliver
02/02/2026                                                     10

**row** 40:14

---

**S**

---

**sale** 50:7

**Saturday** 66:15

**scanned** 30:21

**scenario** 42:7,10

**scene** 7:2 9:5 47:7 48:21

**scheduled** 33:6

**scope** 59:25

**screen** 14:14 15:9,15 22:1,2 39:4,14 40:9 43:19 44:9 46:16 47:4

**screenshot** 55:25

**scroll** 10:9 15:19,23 28:25 29:3 36:22 49:10,16 53:21

**scrolled** 49:13 53:23

**scrolling** 9:24 29:15,18 37:5

**scrolls** 36:19,24

**search** 33:23 34:3,5,10,16,17, 20 47:12 50:1,2,3,13,16 61:7, 12,18 66:25 67:16

**searches** 66:6

**seat** 16:15,16

**seconds** 45:3

**seeking** 13:25

**select** 23:21

**selected** 23:25 24:1

**selection** 23:22 39:7,17

**send** 9:16,17 58:1

**sending** 20:12

**sentence** 50:1 52:15

**separate** 31:2 52:11

**separately** 56:5

**September** 5:21,22

**series** 13:23

**Services** 48:21

**session** 5:8

**sex** 60:24 64:19

**share** 39:4 43:19 44:8 46:16

**shared** 45:11

**shave** 43:10

**sheet** 28:15 62:16,18

**Sheets** 51:25

**shirt** 19:18

**short** 58:7,9

**shorthand** 4:6

**show** 22:9 32:14 33:4,6,16

**showed** 25:8

**showing** 15:25

**shown** 21:7,8 31:12

**sic** 16:5 50:3

**sign** 14:20

**simplicity** 23:18

**sir** 9:23 15:16 29:13

**situational** 42:3

**Sixteen** 47:1

**skin** 40:22,25

**skinned** 16:15

**slept** 65:9

**slim** 38:11

**slow** 44:9

**slowly** 25:14 28:25 29:3

**social** 66:6,18,25 67:16

**son** 63:8

**sounds** 20:17

**Southern** 5:4

**space** 56:24

**speak** 35:17 52:22,25

**speaking** 21:21 35:25 36:2

62:9

**specifically** 21:17 47:11

**speculation** 7:5 59:10 64:21, 24

**spoke** 7:14 8:9 36:5

**stamp** 44:15 45:1

**stand** 51:10

**start** 5:17 6:18 14:3,6 15:2,6 54:2,3

**state** 4:5 5:10 24:25 63:18,22, 25 64:9

**stated** 11:11,12,15 16:22 17:25 18:5,15 19:13,21 21:9, 12 24:19 25:2,13 26:12 27:19 58:20 63:3,19,25

**statement** 12:20 14:24 27:2,6 30:2,14,16 31:2 36:16 37:1,15 53:6,7,17,20 63:1,6

**statements** 51:17

**states** 5:3 11:4 16:13 20:25 21:8 48:20 62:6

**stating** 18:17 19:12 20:15,18 48:17 52:13,16 64:6

**station** 8:10 12:14 14:24 16:3, 23 19:5 24:20 25:3 55:19 59:8,9,13 63:5

**stipulate** 4:10

**stolen** 65:14,23,25 66:1

**stomach** 27:13

**stop** 5:20 29:4

**stops** 44:20

**stress** 42:7

**stressed** 42:9

**subject** 29:22

**submit** 34:16 50:16

**submitted** 19:20 28:11 34:20 38:2 67:23

**submitting** 61:6 67:21

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313.567.8100

LaShauntia Oliver
02/02/2026

11

**summary** 29:24,25 51:8 62:19 63:6,7 64:10,11

**Sunday** 66:15

**supplement** 47:16 48:16

**supplemental** 46:21,24

**supposed** 45:8

**surveillance** 11:16

**suspect** 18:1,18 19:9,13,21 41:22

**sworn** 4:9,11,21 65:18,20

**synched** 13:24

**T**

**Tahoe** 16:18 17:5

**takes** 50:19

**taking** 60:17

**talking** 16:4 21:21 35:13 39:18 60:23 62:4

**tech** 22:24

**technician** 57:3

**techs** 47:11 61:4

**telling** 21:1,5 30:21

**term** 61:15

**terminated** 6:6

**terminology** 51:1

**terms** 41:21,24 50:25

**testified** 4:22 20:9 59:18

**testimony** 4:10,16 18:20 26:1, 15 33:11 36:9

**text** 20:12

**thin** 38:11

**thing** 14:8

**things** 36:14 49:7 51:1

**Thirteen** 33:19,20

**thirty-four** 45:3

**thought** 54:20

**time** 6:14 21:24 24:4 25:19 35:23 42:12,18,21,22 44:14 45:1 54:2,3,4 56:12 57:15 58:1,9 65:9 68:14

**times** 62:1

**title** 50:7

**today** 5:14 6:19

**told** 7:1 12:13 16:2 19:9 30:2 36:5 52:13 54:13 68:13

**top** 15:21 40:14 62:6

**touch** 8:7

**towed** 61:14,18

**track** 53:7

**train** 54:19

**trained** 47:11

**transfer** 50:7

**Trinidad** 16:4 64:19

**true** 16:22 58:3

**truth** 4:17,18 21:1,5 46:12 60:17

**turn** 12:1 37:19

**turned** 38:1,14 44:2 52:2,5

**Twelve** 31:21,22

**two-page** 37:10

**type** 48:16 50:24

**U**

**Uh-huh** 58:22

**uh-uh** 5:9

**uh-uhs** 5:9

**ultimately** 23:23 26:22

**understand** 5:11 21:3 30:11 35:25 60:5 61:20 63:22

**understanding** 43:20

**Understood** 5:12

**unequivocally** 59:18

**unit** 56:13

**United** 5:3

**unusual** 68:2

**V**

**Van** 11:13

**vehicle** 20:16 21:18 26:8,10 48:18,22 49:8,18,23 55:9 61:2,5,12,14 63:9,12,16,19 64:2,19 65:14

**verbatim** 7:8

**verify** 62:4

**version** 61:21

**victim** 16:2,9,22 17:14,15,25 18:17 19:9,13 24:19,25 25:2 26:6,20,22 27:3,7,19,20,21,22 30:2,13 32:5,7,14,16 33:4,14 38:6 40:16,22 41:2,7,13 42:6, 12 43:2 52:13,16 63:1,3

**victim's** 14:24 27:2,6 28:12 30:16 31:2 37:15 41:22

**video** 11:16 20:25 21:7,8,10 22:2 35:19 36:7 43:18 44:11, 24,25 45:8,14,16,17,19,20 46:6 51:19 55:20,21,24 56:3, 16,25 57:3,7,9,11 63:21 64:6

**videoconferencing** 4:7

**videotape** 11:19

**view** 59:7,15

**viewed** 9:4 42:6 45:20 57:7,11 58:24 59:12,18

**viewing** 20:8 44:5 56:3,25

**W**

**Wait** 32:12

**waiting** 10:2

**Walker** 6:20,23 7:1,15,19 11:8 12:3,6,13,17,19,21 37:4 42:16

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
*hansonreporting.com*
313.567.8100

LaShauntia Oliver
02/02/2026
12

44:18 45:21 48:1,5 53:7,18 54:13,16 55:5,15 60:23 64:18 65:12

**walking** 19:4 55:25

**wanted** 52:14

**warrant** 7:12 8:12,14 10:14 27:15 28:3,4,9,11,20 29:23 30:6,9,12,23 32:8 33:1,23 34:3,5,16,18,20 50:14,16,24 61:7,20 62:7 63:7,23,25 64:10 67:21,24

**watched** 20:10

**watching** 21:23 22:3

**Wayne** 19:20 25:5 38:3,14 44:2 52:2 66:24 67:5,19 68:4

**wearing** 19:10 38:12 43:6

**week** 50:20

**weeks** 50:21

**weighed** 17:9 18:1 24:9

**weight** 24:16 27:10,25 41:12 43:8 62:20

**whatever's** 7:8

**White** 5:1 6:10 20:1,3,5,15,18 21:4,8,16 24:2,4 25:16 26:7 28:1 35:13,17,18 36:2,10 40:19,25 41:5,10,13 48:1,2,4 49:4,22 50:7 52:22 53:1 57:15 58:19,25 59:7,8,13,14,21 61:10 65:11,14

**White's** 40:13 50:14 55:12

**wintertime** 27:10

**witness'** 43:2

**Woodruff** 6:10

**word** 10:24

**words** 66:17

**work** 9:8 48:17,22

**worked** 48:17 56:13

**write** 32:17

**written** 12:20 17:15 61:21

**wrote** 16:13

---

**Y**

---

**years** 7:3,7 24:4 58:23 60:3

**yield** 50:3

**young** 16:4 19:4 25:2,11 59:20

**yu** 15:14

---

**Z**

---

**zoom** 47:23



HANSON RENAISSANCE
COURT REPORTERS & VIDEO
*hansonreporting.com*
*313.567.8100*